UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

MICHAEL C. TRIMARCO,
    Plaintiff,
v.

MICHAEL T. FARLEY,
SHAWN PATRICK CARDEN,
MICHAEL A. HILMER,
CHRIS CICOLINI -and-
ASHISH KAPOOR
    Defendants.

Case No. 1:20-cv-01408-RGA
TRIAL BY JURY IS DEMANDED



**MOTION TO DISQUALIFY STEVEN BISS; AND/OR
OBJECTION TO STEVEN BISS' MOTION FOR *PRO HAC VICE* ADMISSION[1]**

## I.    **INTRODUCTION**

We are respectfully asking the court to disqualify Steven Biss from practicing law in this

case, or to deny any pro hac vice motion filed on his behalf.

Over the last 10 plus years, Steven Biss has displayed a surprising disregard for court rules in

cases throughout the country and in his home state of Virginia. The Virginia Bar has twice

suspended and once reprimanded Mr. Biss, including:

- For demonstrating a "lack of competence" in corporate and securities law;
- For demonstrating a "lack of competence" in his representation of the shareholders of a Delaware corporation,
- For assisting "a client in conduct that he should have known was criminal or fraudulent"
- For making "misrepresentations" in "testimony before the United States District Court for the Southern District of New York."
- For committing three "deliberately wrongful acts"; and
- For "conduct involving dishonesty, fraud, deceit or misrepresentation."
- For violating rules concerning conflicts of interest.

---

[1] This motion is so-captioned, because while Mr. Biss is the principal attorney, and has indicated that he will file a pro hac vice motion imminently, he has not done so. To place the issue before the court, we drafted this motion to disqualify. In the event that a pro hac vice motion is filed, this document should be treated as an objection.

In addition to the foregoing, federal judges have repeatedly admonished and sanctioned Mr. Biss for his lack of decorum, the "unintelligibility" of his motions and his "consistent[] fail[ure] to satisfy all Local Rules."

Mr. Biss recently expanded his defamation practice into the District of Delaware and, unfortunately for the litigants, continued his indifference towards court rules. In this case, Mr Biss has represented the plaintiff since drafting the Complaint in the summer of 2020, but did not consider filing a *pro hac vice* application until requested by the defendants. Biss continues to direct the prosecution of the case, scheduling, hosting and leading two Rule 26 (f) conferences.

In addition to the above, Mr. Biss ignored the rules concerning Rule 26(a) Initial Disclosures – and is at least two weeks late in providing the disclosures to defendant Cicolini. In addition, Mr. Biss failed to submit any contribution to the Report required by F.R.Civ.P. 26(f), leaving Cicolini to submit a one-sided report. We note that the court has authority to sanction Mr. Biss for these failures in spite of the fact that he is not yet admitted to practice in Delaware.[2]

This Honorable Court should not grant Mr. Biss permission to appear in this District because he lacks the competence, character, civility and truthfulness to practice law in Delaware. Granting this motion would permit Mr. Biss to continue to file frivolous lawsuits. For the reasons described below, this Court should find that Mr. Biss lacks the qualifications to practice in the District of Delaware and should deny Mr. Biss' Motion for leave to appear *pro hac vice*.

---

[2] This Court has jurisdiction to discipline the applicant for misconduct arising in the course of *this* proceeding pursuant to D. Del. L. R. 83.6(i):

> (i) Attorneys Specially Admitted. Whenever an attorney <u>applies to be admitted</u> or is admitted to this Court for purposes of a particular proceeding (*pro hac vice*), the attorney shall be deemed thereby to have conferred disciplinary jurisdiction upon this Court for any alleged misconduct of that attorney arising in the course of or in the preparation for such proceeding.

## II.    BACKGROUND

This is a meritless defamation case brought by Michael Trimarco against Chris Cicolini and Michael Farley for truthful statements made about Trimarco in direct response to Trimarco's improper efforts to take property without authorization.

In or about 2015, Michael Trimarco was employed by a company in which he had a small ownership interest: Intellipayment.  At some point at the end of 2015 or the beginning of 2016, it appears that virtually all of the assets of Intellipayment were transferred into a company called Intelligent Payment Processing Inc.[3]  Trimarco, through his ownership of Melrose Ventures, claims to be the majority owner of Intelligent Payment Processing Inc. ("IPPI")

In Spring 2018, IPPI sold these same assets to the unsuspecting Uptempo, Inc. for $3 million in Uptempo stock, and a $2 million promissory note.  In mid-2019, Uptempo became aware of the allegations against Trimarco when IPPI, Trimarco and an Uptempo subsidiary were sued by Intellipayment for fraud.  See fn 3.

Although the Uptempo subsidiary was subsequently dismissed, the relationship between Trimarco and Uptempo soured through that litigation and other acts that appeared willfully dishonest. In February 2020, Trimarco was terminated from his month-to-month agreement with Uptempo.  In February and continuing into April and beyond, Mr. Trimarco began attempting to take monies and property from Uptempo and all of its subsidiaries.  He was not authorized to do these things by the Uptempo board or its officers, but he had varying degrees of success.  In April 2020, Trimarco was notified through an indemnification claim letter that the company

---

[3] The transfer of assets from Intellipayment to Intelligent Payment Processing Inc is now the subject of civil litigation in New York Supreme Court.  In that lawsuit, it is alleged by Mickey Cavuoti that Michael Trimarco surreptitiously stole monies, customers, intellectual property, dealer relationships and transferred all to an entity in which Trimarco claims virtually exclusive control (IPPI).  That matter does not involve these defendants, and is presently expected to proceed to trial in or about July 2021.

intended to pursue its rights under certain reps and warranties proffered by Trimarco and IPPI. Trimarco and IPPI were also informed that the company considered his promissory note impaired and suspended payment on the note with approximately $1.2 million still outstanding until the matters could be resolved. Uptempo commenced litigation against Mr. Trimarco, his companies Intelligent Payment Processing Inc, Melrose Ventures and others in Ontario Superior Court (Uptempo et al v. Trimarco et al. CV-20-00647553-0000). The Ontario claim is for damages caused to the company by Trimarco and others between 2018 and 2020. The damages to be proven exceed $5 million exclusive of punitive damages and attorney fees. Mr. Trimarco, IPPI and Melrose declined to respond to the complaint, and have all been defaulted.

Trimarco continued to try to take and control Uptempo property and vendor relationships, including godaddy.com (theft of domain name); Microsoft; ADP; Oxford and Guardian (health and dental plans), and others. Each of the truthful statements alleged by Trimarco to be defamatory were made to an Uptempo vendor or affiliate with the specific goal of protecting the company and its shareholders from theft or misappropriation by Trimarco.

While the Ontario APA dispute might have been resolved amicably, Trimarco continued to threaten, disrupt and harm the business through frivolous litigation, interference with financings, removal of assets critical to running the business and several other acts. Trimarco has been approached three times to participate in settlement discussions on the principal matters. Each time, Trimarco has launched tirades and litigation threats.

To describe Mr. Trimarco as litigious would be an understatement. In the last 15 years, Mr. Trimarco and his businesses have been involved in well over 30 lawsuits, evenly split between plaintiff and defendant. Where he was a defendant, his companies were found responsible for frauds by the Federal Trade Commission and the Florida and Illinois Attorneys General. Where

he was a plaintiff, Trimarco seldom, if ever, prevailed.  For example, in a suit against a former employer over his claim to compensation in the form of stock, he was found to be a "disloyal servant" and denied recovery.  In response, Trimarco sued the judge, her law clerk and opposing counsel.  (These suits failed as well, and most, if not all, were dismissed as "frivolous").

Over the last twelve months, Mr. Trimarco has had difficulty securing and retaining legal counsel to assist him.  Mr. Trimarco has demonstrated a penchant for affiliating himself with disbarred or sanctioned legal counsel to address his issues with Uptempo, Inc.  Specifically, in 2020, Mr. Trimarco was represented by or had legal work performed by the following persons:

- Vincent Trimarco, Jr. – In October 2020, former Attorney Trimarco pled quilty to fraud involving a $2 million settlement owed to a child whose father was killed in custody. Vincent Trimarco is scheduled to be sentenced in April 2021.  In New York, an attorney is automatically disbarred upon the conviction of a crime that would be considered a felony under New York law.  Trimarco is the brother of the plaintiff, and drafted a great deal of correspondence and pleadings for plaintiff throughout 2020.

- Vince J. Tabone – Former attorney Tabone was disbarred in New York in 2016 following his conviction for conspiracy to commit wire fraud and bribery; wire fraud; use of interstate facilities to commit bribery; and witness tampering.  As part of his disbarment, he was specifically prohibited from practicing law in any form, either as principal or as agent, clerk, or employee of another. Tabone was employed as a clerk by Attorney Beltrani, and was responsible for drafting correspondence for Trimarco.

- Robert Beltrani – Mr. Beltrani was publicly censured in 2021 for an incident whereby then-Judge Beltrani became intoxicated and punched a Legal Aid attorney in the head, knocking him to the ground.  Mr. Beltrani has been suspended from the practice of law in Connecticut since 2007.  Beltrani represented Trimarco throughout 2020 until a falling out compelled Beltrani to withdraw from representation in various litigation.

## III.    Key Facts Pertaining to Mr. Biss

Steven Biss first began representing Mr. Trimarco in or about August 2020.  Elsewhere, Mr. Biss has developed a reputation for filing outlandish defamation cases, including on behalf of California Republican Devin Nunes and peripheral figures in various Trump lawsuits and investigations (Svetlana Lhokova v. Stefan Halper, 1:19-cv-00632 (E. D. Va. 2019)).  Steven

Biss is perhaps best known as the legal mind behind a defamation lawsuit[4] over an imaginary tweeting cow who wrote the following:

- Devin Nunes is a "treasonous cowpoke" and his "boots are full of manure"
- Devin Nunes is "udderly worthless"

More importantly, Mr. Biss has been sanctioned, censured and admonished for conduct in Virginia, New York, Illinois. The following key facts and incidents were gleaned from a review of PACER, media search queries and the Virginia State Bar website:

### A. Virginia Bar Suspension #1

Mr. Biss' first suspension from the practice of law emanated from a fraud. Biss was sued for fraud by Delaware corporation Brand-Aid. The suit was brought in the Southern District of New York. In that matter, Biss represented a corporation (Cyberian) trying to buy shares of the Delaware company. Biss held the BrandAid shares in escrow based upon his representation that his client had $21 million was on deposit in a New York bank. As it turned out, there was no money on deposit anywhere, and Biss' client defaulted on the transaction. Biss did not promptly return the shares. On January 25, 2008, Mr. Biss was found jointly and severally liable for fraud. Mr. Biss' appeal was denied. BrandAid v Biss, Second Circuit Court of Appeals, Case 1:03-cv-05088-WHP-GWG (04/16/09). The Virginia Bar investigated the matter and made stunning findings that Biss 1) committed "deliberately wrongful acts," 2) demonstrated a "lack of competence," 3) assisted a client with "criminal or fraudulent" conduct and 4) made misrepresentations in "testimony":

*1. Respondent [Biss] breached his fiduciary duties in connection with the escrow as follows:*

---

[4] Aaron Blake, "*The ridiculousness of Devin Nunes suing 'Devin Nunes' cow' — and what it really signals*" WASHINGTON POST, March 19, 2019.

- *... [Biss] purported to serve a written consent on behalf of BrandAid shareholders in favor of extraordinary corporate events (replacing the BrandAid management and approving the Artz Proposal). At this time, the Subscription Agreement was in force, Cyberian had not paid for the BrandAid shares, and [Biss] was supposed to be holding the shares in escrow until paid for. [Biss] purported to have authority to serve the written consents by virtue of holding proxies for a majority of BrandAid shareholders. However, [Biss] did not comply with federal securities laws in obtaining or exercising the proxy votes.*
- *On or about May 30, 2003, [Biss] delivered the shares of BrandAid to Cyberian without having first received payment . . . .*

*In so doing, [Biss] committed deliberately wrongful acts that reflect adversely on his fitness to practice law in violation of Rule 8.4(b) of the Rules of Professional Conduct.*

2. *In both soliciting and exercising the proxies from BrandAid shareholders, [Biss] violated federal security laws as follows:*

- *[Biss] solicited proxies from BrandAid shareholders without concurrently providing them with a proxy statement and without concurrently filing a proxy statement with the SEC.*
- *[Biss] filed the proxy statement with the SEC after he had voted the proxy shares by written consent.*
- *On May 23, 2003, [Biss] voted or attempted to vote the proxy shares by written consent without first disclosing to the SEC or the public his intent to replace BrandAid's directors and officers, merge BrandAid with another company, and accept the Artz Proposal, all of which constitute extraordinary corporate events.*
- *The proxy statement filed by [Biss] failed to disclose that respondent had reason to believe that his stockholder clients, who had assisted him with the proxy solicitation, and their clients may have stood to earn a significant finder's fee if the sale of BrandAid stock to Cyberian was consummated.*
- *[Biss] did not file the schedule 13 D with the SEC until . . . more than 10 days after . . . the day he claimed to hold a beneficial ownership of BrandAid and the day he voted or attempted to vote the proxy shares by written consent. This delay in filing is material because in the interim, respondent voted or attempted to vote the shares to effect extraordinary corporate changes.*

*In so doing, [Biss] demonstrated a lack of competence to represent his client in the area of corporate and securities law and a lack of competence to represent BrandAid shareholders as a lawyer who solicited and exercise their proxy votes in violation of Rule 1.1 of the Rules of Professional Conduct.*

3. *[Biss] assisted Cyberian in conduct he should have known was criminal or fraudulent as follows:*

- *[Biss] made repeated assurances to BrandAid that he soon would receive funds from Cyberian to pay for the BrandAid stock under the terms of the subscription agreement, when in fact he should have known that Cyberian would not be transmitting any funds.*

- *By breaching his fiduciary duties in connection with the escrowed BrandAid shares and by violating federal securities laws in connection with soliciting and exercising BrandAid proxy votes, [Biss] assisted Cyberian in a cashless takeover of BrandAid.*

  *In so doing [Biss] assisted a client in conduct that he should have known was criminal or fraudulent in violation of Rule 1.2 C of the Rules of Professional Conduct.*

4. *[Biss'] testimony before the United States District Court for the Southern District of New York contained misrepresentations as follows:*

   - *[Biss] testified that he "had no clue" what "assets were going to be tendered" by Cyberian to pay for the shares of BrandAid, and then it was not until May 27, 2003 that he learned Cyberian was paying for the BrandAid shares with Chinese real estate instead of cash.*

   *In so testifying, [Biss] committed a deliberately wrongful act that reflects adversely on his fitness to practice law in violation of Rule 8.4(b) of the Rules of Professional Conduct.*

Mem. Order, <u>Va. St. Bar, ex rel Third Dist. Comm. v. Biss</u>, Case No. CL07-1846, Cir. Ct. of the Cnty. of Chesterfield

In this case, Mr. Biss was suspended from the practice of law for one year and one day, beginning January 1, 2009. We respectfully submit that a Delaware attorney committing this level of misconduct would almost certainly be disbarred.

## B. **Illinois Federal Court – Verbal Condemnation**

In October 2004 (in a case where Biss was admitted *pro hac vice*), Mr. Biss was given a pointed condemnation by a federal judge for claiming that he had more clients than he represented.

A transcript from the case shows the judge was shocked by Biss, who said he was representing 226 clients suing Citigroup Global Markets, Inc. over bad investments.

In fact, Biss represented fewer than 170 investors.

Judge Matthew F. Kennelly of the U.S. District Court for Northern Illinois scolded Steven S. Biss in court, according to a transcript.

JUDGE:  *You file a suit on behalf of somebody you never talked to? I mean that's astounding. That's astounding. I mean, I've never heard of that happening in my life. Have you?*

The transcript shows that Biss replied that he had not.

The investors Biss represented were seeking $124.5 million from Citigroup Global Markets. They alleged that brokers at Citigroup Global Markets had purposely misled investors.

JUDGE:  *We've got four of five people in here who have signed sworn declarations saying they don't know you from the man in the moon and they've never talked to any of the lawyers for the plaintiffs in the lawsuit at the beginning. How is this possible?*

The judge threatened to report Biss for ethics violations, demanding a written explanation of how it happened.

JUDGE:  *And if I were you, I would consult with a lawyer before I did it. Okay?*

A review of records did not show any discernible consequences.  The records also indicate that Biss' lawsuit was wholly meritless.

Kevin G. Hall and Kate Irby, "*Unpaid bills and legal discipline: Devin Nunes' lawyer questioned over ethics in complaints,*" FRESNO BEE, January 30, 2020.

**Virginia Bar – Suspension #2**

The Virginia Bar suspended Mr. Biss from the practice of law a second time in 2010.  Mr. Biss had not complied with the earlier suspension.  The Virginia bar wrote that Biss' second suspension was for "conduct involving dishonesty, fraud, deceit or misrepresentation" by holding himself out as an attorney while his license was suspended.  In the Matter of Steven Scott Biss, VSB Docket No. 09-032-078962.

**C.  Virginia Bar - Public Reprimand**

Mr. Biss later received a third admonition from the Virginia Bar.  In 2010, he received a public reprimand for violating conflict of interest rules.  See Mem. Order, In the Matter of Steven Scott Biss, VSB Docket No. 07-033-070921.

**D.  Virginia Federal Court – Decorum Issue #1**

More recently, a Virginia federal judge wrote that Biss' motions "border on unintelligibility" and "consistently fail to satisfy all Local Rules."

The judge also wrote that Biss' statements fell "well below the standards of practice this Court expects." In addition, she expressed "dismay" and "chagrin" at Biss for his pleadings, where he wrote that his opponent was "childish", engaging in "unprofessional theatrics", "juvenile bullying" and "made a fool of himself." The Court pointedly reminded Mr. Biss that he is subject to "sanctions for engaging in conduct unbefitting of this Court." Steele v. Goodman, 2019 WL 3367983 (E.D. Va. July 25, 2019).

### E.  Virginia Federal Court – Decorum Issue #2

In 2019, Biss used extremely foul language in a doomed federal Complaint.

1. Stefan Halper is a ratfucker and a spy, who embroiled an innocent woman in a conspiracy to undo the 2016 Presidential election and topple the President of the United States . . ..

Lokhova v. Halper et al, 1:19-cv-00632 (E. D. Va. 2019) Plaintiff's Complaint p. 1.

The suit appeared to be politically motivated and was subsequently dismissed. In addition, to Mr. Halper, Biss had also brought the suit against the Wall Street Journal, the New York Times, the Washington Post, and NBCUniversal.

In drafting the dismissal order U.S. District Judge Leonie Brinkema wrote:

*The actions of improper behavior by Biss are undoubtedly more severe than those of [his client], and should Biss file further inappropriate pleadings or pursue frivolous post judgment litigation[5] against any of these defendants, sanctions might well be justified.*

Lokhova v. Halper et al, 1:19-cv-00632 (E. D. Va. 2019) – Order February 27, 2020.

To summarize:

- The Virginia Bar specifically found that Steven Biss demonstrated "a lack of competence" in the area of corporate and securities law.
- The Virginia Bar specifically found that Steven Biss demonstrated "a lack of competence" to represent shareholders of a Delaware company.
- The Virginia Bar specifically found that Steven Biss committed deliberately wrongful acts that reflect adversely on his fitness to practice law.

---

[5] We respectfully note that Biss filed post-judgment litigation against the defendants. .

- The Virginia Bar specifically found that Steven Biss assisted a client in conduct that he should have known was criminal or fraudulent.

- An Illinois federal judge condemned Steven Biss for filing lawsuits on behalf of people he had never met, including "four or five" who gave sworn declarations that "they don't know [Biss] from the man in the moon."

- The Virginia Bar suspended Steven Biss from the practice of law a second time in 2010. This second suspension was for "conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law" by holding himself out as an attorney while his license was suspended.

- The Virginia Bar publicly reprimanded Steven Biss for violating conflict of interest rules.

- A Virginia federal judge wrote that Steven Biss' motions "border on unintelligibility" and "consistently fail to satisfy all Local Rules." In addition, the judge expressed "dismay" and "chagrin" at Biss for breaching federal court rules of decorum over his taunting of a pro se defendant.

- Steven Biss specifically described a defendant as a "ratfucker" in a fatally flawed federal defamation Complaint. In the order of dismissal, the federal judge wrote "should Biss file further inappropriate pleadings or pursue frivolous post-judgment litigation against any of these defendants, sanctions might well be justified."

## IV.    RELEVANT LAW

In Delaware federal court, *pro hac vice* admission is governed by Local Rule 83.5.

(c) Admission Pro Hac Vice. Attorneys admitted, practicing, and in good standing in another jurisdiction, who are not admitted to practice by the Supreme Court of the State of Delaware, <u>may be admitted pro hac vice to the Bar of this Court in the discretion of the Court, such admission to be at the pleasure of the Court.</u> Unless otherwise ordered by the Court, or authorized by the Constitution of the United States or acts of Congress, an applicant is not eligible for permission to practice pro hac vice if the applicant:

(1) Resides in Delaware; or
(2) Is regularly employed in Delaware; or
(3) Is regularly engaged in business, professional, or other similar activities in Delaware.

Any judge of the Court may revoke, upon hearing after notice and for good cause, a pro hac vice admission. The form for admission pro hac vice, which may be amended by the Court as prescribed by standing order, is appended to these rules.

(d) Association with Delaware counsel required. Unless otherwise ordered, an attorney not admitted to practice by the Supreme Court of the State of Delaware may not be admitted pro hac vice in this Court unless associated with an attorney who is a member of the Bar of this Court and who maintains an office in the District of Delaware for the regular transaction of business ("Delaware counsel"). Consistent with CM/ECF Procedures, Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. Unless otherwise ordered, Delaware counsel shall attend proceedings before the Court.

(e) Time to Obtain Delaware Counsel. A party not appearing pro se shall obtain representation by a member of the Bar of this Court or have its counsel associate with a member of the Bar of this Court in accordance with D. Del. LR 83.5(d) within 30 days after:

      (1) The filing of the first paper filed on its behalf; or
      (2) The filing of a case transferred or removed to this Court.
<u>Failure to timely obtain such representation shall subject the defaulting party to appropriate sanctions under D. Del. LR 1.3(a).</u>

D. Del. L.R. 83.5 (c-e) (emphasis added).

Sanctions for violation of Local Rules are governed by Local Rule 1.3.

(a) In General. Sanctions may be imposed, at the discretion of the Court, for violations of the Rules, as well as for violations of the Fed. R. Civ. P. and any order of the Court. Such sanctions may include, but are not limited to, costs, fines and attorneys' fees imposed on the offending party and that party's attorney.

(b) Substantive Sanctions. In addition to financial penalties, failure of counsel to comply with the set Rules relating to trial preparation may be considered an abandonment or a failure to prosecute or defend diligently, and judgment may be entered against the defaulting party either with respect to a specific issue or the entire case. Likewise, failure of counsel to comply with the Rules relating to motions may result in the determination of the motion against the offending party.

D. Del. L.R. 1.3.

## V.      ANALYSIS

Admission to the Bar of one state does not carry with it the right to practice law anywhere else. <u>Hawkins v. Moss</u>, 503 F.2d 1171 (4th Cir. 1974), cert. denied, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975); see <u>In re Stolar</u>, 401 U.S. 23, 33, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971) (Blackmun, J., dissenting). The same is true of admission to the district courts of the United States. See <u>Lark v. West</u>, 110 U.S.App.D.C. 157, 289 F.2d 898, cert. denied, 368 U.S. 865, 82 S.Ct. 114, 7 L.Ed.2d 63 (1961); Note, Retaining Out-of-State Counsel: The Evolution of a Federal Right, 67 Colum.L.Rev. 731, 738 (1967).

However, most, if not all, federal courts allow for the admission of attorneys *pro hac vice*; that is, an attorney from another jurisdiction will be admitted to present only one matter. This is

provided for in the Supreme Court of the United States, <u>Dennis v. United States</u>, 340 U.S. 887, 71 S.Ct. 133, 95 L.Ed. 644 (1950).

Admission *pro hac vice* is a privilege, not a right, and the decision to admit out-of-state counsel for a particular case is in the sound discretion of the court. See <u>Leis v. Flynt</u>, 439 U.S. 438, 442, 99 S. Ct. 698, 58 L. Ed. 2d 717 (1979) (admission *pro hac vice* "is not a right granted either by statute or the Constitution"); <u>Cooper v. Hutchinson</u>, 184 F.2d 119, 122 (3d Cir. 1950) ("It has always been thought that the license to practice law is limited, except as a matter of grace, to persons who had fulfilled the local requirements for practice."); <u>Thoma v. A.H. Robins Co.</u>, 100 F.R.D. 344, 348 (D.N.J.1983). It may be revoked for improper or unethical conduct. See, e.g., <u>Johnson v. Trueblood</u>, 629 F.2d 302, 304 (3d Cir.1980); <u>Data Systems Analysts, Inc. v. Netplex Group</u>, 187 F.R.D. 181 (D.N.J.1999); <u>Eagan v. Jackson</u>, 855 F. Supp. 765 (E.D.Pa.1994).

In practice, the application process for admission before the federal district courts is generally perfunctory and pro forma." <u>In re U.S.</u>, 791 F.3d 945, 957 (9th Cir. 2015), (quoting <u>Zambrano v. City of Tustin</u>, 885 F.2d 1473, 1483 (9th Cir.1989)).

"Therefore, if a court has ethical doubts about an attorney who is in good standing with a state bar, it must articulate some reasonable basis for those doubts before denying the attorney's application for *pro hac vice* admission." <u>In re U.S.</u>, 791 F.3d at 957.

Where the evidence strongly suggests that an out-of-state attorney will neither abide by the court's rules and practices and will thereby impede the orderly administration of justice, or will not be readily answerable to the court, the court may reject his *pro hac vice* application. <u>United States v. Ries</u>, 100 F.3d 1469, 1471 (9th Cir. 1996). While the district court has the discretion to deny a *pro hac vice* application, the court must articulate valid reasons to deny the

application. <u>Ries</u>, 100 F.3d at 1742; <u>In re U.S.</u>, 791 F.3d 945, 956 (9th Cir. 2015). At minimum, a court's decision to deny *pro hac vice* admission must be based on criteria reasonably related to promoting the orderly administration of justice or some other legitimate policy of the courts." <u>In re U.S.</u>, 791 F.3d at 957 (internal punctuation and citations omitted).

It is important to remember that a juris doctor does not confer a property right to attorneys to practice law in any jurisdiction. A court's refusal to temporarily admit an attorney is not a constitutional matter in civil cases. In contrast, the denial of a motion for admission *pro hac vice* in a criminal case is usually treated as a disqualification of counsel. In criminal cases, the disqualification of counsel selected by a defendant may infringe his or her constitutional right to counsel of choice.

The United States District Courts have no uniform standard for admission pro hac vice. <u>In re Dreier</u>, 258 F.2d 68, 69 (3d Cir. 1958) ("there is no federal procedure for examining applicants either as to legal ability or moral character.")

In the District of New Jersey, guidance comes from local rule 101.1(c)(1), which is similar to that of Delaware. The New Jersey rule states in pertinent part: "Any member in good standing of the bar of any court of the United States or of the highest court of any state, who is not under suspension or disbarment... may <u>in the discretion of the Court</u>, on motion, be permitted to appear and participate in a particular case." N.J. Fed. Prac. R. 101.1(c)(1) (emphasis added). Although there are few stated requirements under this rule, the discretionary language, including the specific choice of the word "may," undoubtedly contemplates situations where good standing alone may not be enough to secure *pro hac vice* admission. <u>Kohlmayer v. Nat'l R.R Passenger Corp.</u>, 124 F.Supp.2d 877, 889 (D.N.J. 2000).

Indeed, unacceptable attorney conduct or character might not always be gleaned solely from an attorney's bar standing alone. If that were the case, the local rules would have provided that any licensed attorney would be granted admission simply upon application.

Motions for *pro hac vice* admission are liberally granted, but this practice should not suggest that the Court lacks standards for *pro hac vice* admission outside of the requirements articulated in the Court's local rules. Although it is true that most *pro hac vice* motions are granted, they are usually unopposed or submitted with the consent of opposing counsel. However, where there appears to be question regarding the fitness of a lawyer seeking *pro hac vice* admission, this Court relies upon, and indeed expects, the assistance of the attorneys in the matter to present such information to the Court. It would be impossible for the Court to undertake an independent background review of every attorney seeking *pro hac vice* admission. Dalton v. General Motors, Civ. No. 05-727 (SRC) (D. New Jersey 2005).

In considering this precise issue, a New Jersey federal court reasoned thusly:

> The judiciary of the District of New Jersey seeks to maintain the highest standards of professional responsibility among the attorneys and litigants appearing in its courtrooms. By designating the Court as the gatekeeper of out-of-town counsel, the authors of the local rules anticipated that the Court would utilize its discretionary review of pro hac vice applications to maintain these standards and that the Court would occasionally deny applications for good cause shown. It is of the utmost importance to this Court that admitted attorneys exemplify good moral and professional character at all times.

Dalton v. General Motors, Civ. No. 05-727 (SRC) (D. New Jersey 2005).

There is little case law available in this District to define the standards of granting or denying pro hac vice admission. The issues and concerns of the Court relating to *pro hac vice* admission are thoughtfully discussed in Kohlmayer v. National Railroad Passenger Corp., 124 F.Supp.2d 877 (D.N.J. 2000). In that case, the NJ federal court affirmed a magistrate judge's decision to deny a *pro hac vice* application, emphasizing the importance of attorney civility in

and out of the courtroom. Id. at 879. The court noted that although uncivilized attorney conduct may not rise to the level of a technical violation of ethics rules resulting in official discipline, that conduct may nonetheless be a cause of concern because of its "stain on the legal profession and often [its] delay[] [of] the judicial process." Id.

In Kohlmayer, the attorney seeking *pro hac vice* admission had a record "replete with instances of grossly inappropriate, uncivilized, and unprofessional behavior." Id. at 880. Specifically, a mistrial was granted in a federal court matter, in part due to the attorney's "improper opening statement, his egregious leading of witnesses, his attempt to coach the plaintiff during cross-examination... and his troubling demeanor." Id. at 881. The Kohlmayer court cited another case involving the same attorney where a district court granted a motion for a new trial by defendants based upon the attorney's "grossly uncivilized behavior at trial." Id. at 880. The attorney verbally attacked his adversary during trial and on the record. Id . He apologized for the outbursts and the court continued the trial with a "wait-and-see' attitude." Id . When granting defendants' motion for a new trial, the court noted that it made a mistake when it allowed the trial to proceed, as the attorney's poor conduct only continued through trial. Id.

The attorney in Kohlmayer unsuccessfully argued that the above noted incidents and other cited conduct were not relevant to his pending *pro hac vice* application. In rejecting this assertion, the court noted that "[i]f [the attorney] chooses to act in an uncivilized, possibly unethical manner, he should expect negative repercussions." Id. at 881. The attorney argued that the court did not have the authority to deny *pro hac vice* admission where an attorney is in good standing. He further asserted that "admission to a state bar creates a presumption of good moral character that cannot be overcome by the whims of the district court.'" Id. at 882 (citing Schlumberger Tech., Inc. v. Wiley, 113 F.3d 1553, 1559 (11th Cir. 1997)). Although the court

did not disagree with this premise, it added that "the record [before the Court] is more than sufficient to overcome (in a far from whimsical manner) the presumption of [the attorney]'s good moral character." Id.

The Third Circuit Court of Appeals mandates certain procedures for the administration of pro hac vice <u>revocations</u> in <u>Johnson v. Trueblood</u>, 629 F.2d 302 (3d Cir. 1980). Although <u>Johnson</u> involved the revocation of an attorney's pro hac vice admission at the conclusion of trial rather than an initial pro hac vice application, we submit that the reasoning applies equally to the denial of a pro hac vice admission, as it does to its revocation.

In <u>Johnson</u>, the United States District Court for the Eastern District of Pennsylvania revoked the pro hac vice admission of an attorney based upon his conduct during trial. <u>Id</u>. at 302. The attorney had no notice or hearing on the matter, which was initiated sua sponte by the court. <u>Id</u>. The issue presented to the Third Circuit on appeal was "what procedures should be used where a district court seeks to revoke an attorney's pro hac vice status." <u>Id</u>. at 303.

The Third Circuit held that when a district court seeks to revoke an attorney's pro hac vice status, "some type of notice and an opportunity to respond" are required. <u>Id</u> . The actual type of notice required is at the discretion of the court, but at a minimum, the notice should include a description of the conduct in question and the specific reason that conduct may justify revocation. <u>Id</u>. at 304. The second requirement, an "opportunity to respond, " does not necessarily mandate a full-scale hearing, but does necessitate a "meaningful opportunity to respond to the identified charges." <u>Id</u> . "[I]n certain cases a full hearing might be desirable, " but this decision is also at the district court's discretion. <u>Id</u>.

An attorney's good moral and professional conduct is an appropriate and essential inquiry when considering a motion for *pro hac vice* admission, and that indeed, a consistent record of

improper conduct may warrant denial of the application. <u>Dalton v. General Motors</u>, Civ. No. 05-727 (SRC) (D. New Jersey 2005). Further, this Court is satisfied that there is a point where an attorney's "repeated, documented, instances of uncivilized behavior, whether or not rising to the level of disbarable offense, strips him of the privilege of *pro hac vice* admission." <u>Kohlmayer</u> 124 F.Supp.2d at 883. In the present application, Mr. Biss record of improper conduct is well-documented. It includes name-calling, unintelligible motions, taunting pro se defendants, filing lawsuits on behalf of unknowing parties, filing frivolous lawsuits over imaginary cows, filing time-barred litigation. His instances of uncivilized behavior are repeated and well-documented over a long period.

Although past disciplinary actions may not bar admission to this Court, they are entirely relevant to the Court's review of the attorney's background and fitness to practice in this district. The determination of whether an attorney's conduct merits denial of <u>pro hac vice</u> admission must be made on a case-by-case basis and the ultimate determination of the attorney's admission pro hac vice is at the discretion of the Court. <u>Dalton v. General Motors</u>, Civ. No. 05-727 (SRC) (D. New Jersey 2005). In the present case, Mr. Biss has been sanctioned three times by his home bar of Virginia. He was suspended for a year and a day for serious misconduct. Mr. Biss was found to "demonstrate a lack of competence" in areas of corporate law, and a "lack of competence" in <u>Delaware shareholder representation</u>. Mr. Biss was found to have assisted a client in conduct that he should have known was criminal or fraudulent. Mr. Biss was found to have committed deliberately wrongful acts. Perhaps most damningly, Mr. Biss was actually sanctioned for making misrepresentations before the Southern District of New York. We respectfully submit that any of these actions individually would have warranted disbarment. Moreover, the facts of this case specifically deal with the actions of his client who claims to have taken ownership of a

Delaware corporation in derogation of the rights of the Delaware corporation's shareholder.  This is not the right case for Steven Biss.

Mr. Biss was also suspended by the Virginia Bar for a month, when he was found to engage in "conduct involving dishonesty, fraud, deceit or misrepresentation."  In that case, Mr. Biss was found to have represented an individual during his period of suspension.  In response, he claimed (in essence), "I didn't know I couldn't do that."  The Virginia Bar did not find his statement credible or trustworthy.  Neither should this court.

Later still, Mr. Biss was publicly reprimanded by the Virginia Bar for violating conflicts of interest laws.

A Delaware Superior Court Judge recently revoked a *pro hac vice* admission for an attorney who has developed a national reputation for filing frivolous lawsuits.

> *A Delaware Superior Court judge slammed pro-Trump attorney Lin Wood in a Monday decision, revoking Wood's right to represent ex-Trump aide Carter Page in a defamation suit stemming from the Mueller investigation.*
>
> *"The conduct of Mr. Wood, albeit not in my jurisdiction, exhibited a toxic stew of mendacity, prevarication and surprising incompetence," Judge Craig Karsnitz wrote.*
>
> *Karsnitz said that he is required to "ensure that those practicing before me are of sufficient character, and conduct themselves with sufficient civility and truthfulness," particularly when out-of-state counsel is selected. Wood is based in Georgia.*
>
> *Noting Wood's involvement in the Trump campaign's unsuccessful efforts to challenge the results of the 2020 presidential election, the judge wrote that he became concerned after reviewing the decisions made in lawsuits Wood filed in Georgia and Wisconsin courts.*

Katherine Fung, "*Pro-Trump Attorney Lin Wood Not of 'Sufficient Character' to Practice Law, Decides Judge*, NEWSWEEK January 12, 2021.

The primary difference between attorney Lin Wood and attorney Steven Biss is that while both have pursued questionable defamation cases for persons in the orbit of former President Trump, attorney Lin Wood has <u>not</u> been sanctioned by his home bar three times (twice for

dishonesty or misrepresentations) – Biss has.  The Delaware Superior Court looked closely at

Attorney Lin Wood's competence, character, civility and truthfulness, and found that he should

not be permitted to practice law in that forum.  Mr. Biss' competence, character, civility and

truthfulness does not pass that test either.

## VI.      CONCLUSION

Given the nature of this lawsuit, we respectfully submit that the court should exercise its

discretion and disqualify Mr. Biss or deny his *pro hac vice* application.

WHEREFORE, the defendant respectfully requests that the court:

  a.  Conduct a hearing to determine whether Mr. Biss possesses the moral character,
      truthfulness, civility and competence expected in Delaware federal court; and

  b.  That Mr. Biss be disqualified from practicing in this matter and that any *pro hace vice*
      motion be denied; and

  c.  That the court enter such other relief as deemed appropriate, including but not limited to
      requiring Mr. Biss to post a bond.

<div style="margin-left:50%">

The defendant, pro se
/s/Michael Farley
Michael Farley
One Courthouse Square
Newport, RI 02840
mfarleyesq@yahoo.com
401-835-8775

</div>

## CERTIFICATION

The defendant certifies that it delivered a copy of the foregoing document via electronic mail to
opposing counsel on February 24, 2021 to the following addresses:

Ryan Ernst, Esq. rernst@oelegal.com/       /s/_____ Michael Farley



FedEx *Express*



ORIGIN ID:NCOA   (401) 835-0775
MICHAEL FARLEY

26 HUNTER AVE

NEWPORT, RI 02840
UNITED STATES US

SHIP DATE: 23FEB21
ACTWGT: 0.30 LB
CAD: 6993256/SSF02121

BILL CREDIT CARD

TO  OFFICE OF THE CLERK
    UNITED STATES DISTRICT COURT
    844 N KING ST
    UNIT 18
    WILMINGTON DE 19801
    (302) 493-2303        REF1

FedEx
*Express*

E

TRK# 7840 4160 1792
0201

WED – 24 FEB 4:30P
STANDARD OVERNIGHT

EE ZWIA

19801
DE-US  PHL

FILED
FEB 24 2021
U.S. DISTRICT COURT
DISTRICT OF DELAWARE