UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL C. TRIMARCO,<br>        Plaintiff,<br>v.<br><br>MICHAEL T. FARLEY,<br>SHAWN PATRICK CARDEN,<br>MICHAEL A. HILMER,<br>CHRIS CICOLINI -and-<br>ASHISH KAPOOR<br>        Defendants. | Case No. 1:20-cv-01408-RGA<br>TRIAL BY JURY IS DEMANDED<br><br>FILED<br>MAR 15 2021<br>U.S. DISTRICT COURT<br>DISTRICT OF DELAWARE |

**REPLY MEMORANDUM RE DISQUALIFICATION OF ATTORNEY STEVEN BISS**

## I.      INTRODUCTION

Issues were raised in the Opposition which merit a reply, and a new issue arose since the memorandum was filed:

- A. Mr. Biss inaccurately minimized the findings in his formal disciplinary history;
- B. Mr. Biss' footnotes contained several deceptive denials;
- C. Mr. Biss is the subject of a pending Rule 11 petition in the Eastern District of Virginia

Each of these items is discussed below.

### A. The Full Measure of Mr. Biss' Formal Disciplinary History

Mr. Biss heavily downplayed the significance of his formal disciplinary history.  These disciplinary findings warrant closer review.  Copies of this disciplinary history are attached to measure against Mr. Biss' descriptions of the same.  There were three such disciplinary findings brought to this court's attention by the defendant:

**1.  The Brand Aid Fraud**

Mr. Biss was suspended for a year and a day by the Virginia State Bar for several different findings of misconduct.

Using these words, Mr. Biss described to the court his "error" in the Brand Aid fraud:

> In 2009, Mr. Biss was temporarily suspended from the practice of law in Virginia. He vouched for the representations of a client, whom he did not know well, and the representations turned out to be inaccurate. He acknowledged the error and accepted a suspension.

Biss Memorandum ¶6 (emphasis added).

Mr. Biss' description of his misconduct is deficient. In truth, Mr. Biss' "error" went beyond simply vouching for an inaccurate client. His misconduct went far beyond and involved layers of deception, incompetence and criminality.

a.  In breaching fiduciary duties related to an escrow account, Mr. Biss "committed deliberately wrongful acts" that reflect adversely on his fitness to practice law.

b.  Mr. Biss "violated federal securities laws" in five (5) documented ways, and in doing so, also "demonstrated a lack of competence" in two different areas of law.

c.  Mr. Biss assisted his client in conduct that he "should have known was criminal or fraudulent."

d.  Mr. Biss' "testimony before the United States District Court for the Southern District of New York contained misrepresentations."

All of these findings are available for the court's review in **Exhibit A**. The findings in this case do not square with the explanation given to the court: "He vouched for the representations of a client, . . . , and the representations turned out to be inaccurate."

Attorneys have a duty of candor toward the court. Mr. Biss has not been candid with the court about the Brand Aid fraud. This lack of candor alone should disqualify Mr. Biss from appearing in Delaware federal court. If he cannot be candid to the Delaware federal court

2

about a black-and-white disciplinary finding, he does not have the moral character or truthfulness expected of a Delaware attorney.

## 2. The Unauthorized Practice of Law

During his period of suspension for the Brand Aid fraud, *supra*, it was found that Mr. Biss continued to practice law. For this misconduct, Mr. Biss was suspended for an additional month.

Using these words, Mr. Biss described to the court his "error" in the Unauthorized Practice of Law case:

> In 2009, while his license was suspended, he assisted a client with an insurance claim, which he learned he was not permitted to do. His license was suspended for an additional month as a result.

Biss Memorandum ¶6 (emphasis added).

Again, Mr. Biss understates the seriousness of his misconduct. In truth, Mr. Biss represented a client in a claim for approximately two months during his suspension from the practice of law. On November 26, 2008, Biss was notified that he would be suspended from the practice of law from January 1, 2009 to January 2, 2010. Two weeks later, he sent a demand letter on behalf of a Mrs. Guthrie. Throughout January and February 2009, Biss continued to correspond and communicate with an insurance claims adjuster, sending a settlement, wage claims and medical bills, etc. When Mr. Biss was hauled back before the Virginia State Bar, he told them that he thought it was acceptable, because he changed his letterhead to remove "attorney at law," and he referred to Mrs. Guthrie as his "principal.[1]"

---

[1] The Virginia State Bar accurately noted that Mr. Biss did not correct the claims adjuster when he referred to Ms. Guthrie as his "client."

3

The Virginia Bar was unpersuaded. They found that Mr. Biss, despite being suspended effective January 1, 2009, continued to represent a client throughout January and February. The Bar found that Biss had committed "professional misconduct," that is, he "engaged in conduct involving dishonesty, fraud, deceit or misrepresentation." See **Exhibit B**.

According to Biss, he didn't know he couldn't do that.

### 3.  Conflict of Interest

In 2010, Biss was also censured by the Virginia Bar for additional misconduct.

Mr. Biss described the sanction in the Conflict of Interest matter - using these words:

> In 2010, Mr. Biss agreed to a public reprimand in order to <u>resolve a disputed allegation of a conflict of interest</u> made by an opposing party against whom Mr. Biss had obtained a $1,100,000 jury verdict.

Biss Memorandum ¶6 (emphasis added).

Mr. Biss' description of his misconduct is less than forthcoming, and the latter part of the explanation is self-serving. In truth, Mr. Biss had represented an entity called United Refuse in two matters. Thereafter, he sued United Refuse's parent company, and declared United Refuse to be a "dummy company" organized to "perpetrate fraud." The parent company moved to disqualify Mr. Biss, and the court granted the motion because Mr. Biss was taking a position adverse to a former client., in violation of Rule 1.9. In a subsequent suit, Mr. Biss again tried to take a position adverse to his former client, and was again the subject of a motion to disqualify

and the motion was again granted.[2] The matter was referred to the disciplinary board and Mr. Biss was found to have violated Rule 1.9 of the Rules of Professional Conduct. See **Exhibit C.**

This was not a "disputed" conflict of interest. It could only be described as an "undisputed" conflict of interest. He was specifically found to have a conflict of interest in two separate cases, and then again by the Virginia State Bar. Mr. Biss may have admitted responsibility with the Virginia State Bar, but he has not been candid with this Court.

Overall, Mr. Biss' formal disciplinary history is quite serious. It contains findings of incompetence (2), a finding of misrepresentation to a federal court, findings of violations of federal securities law (5), findings of breaches of fiduciary duties related to escrow accounts (2), findings that he assisted a client with conduct he should have known was criminal or fraudulent (2), the unauthorized practice of law and breaches of duties to former clients. Mr. Biss has not been candid about his disciplinary history. In his response, Mr. Biss has minimized and downplayed his disciplinary history. The court should take that into account when deciding whether to admit Mr. Biss.

A relevant Second Circuit decision upheld the denial of a pro hac vice petition for an attorney who minimized his disciplinary in a discussion with the U.S. District Court judge. In In Re Rappaport, 558 F.2d 87 (2d Cir 1977), Attorney Blitstein had filed a mandamus petition seeking reversal of Judge Efvin's denial of a pro hac vice motion. Judge Efvin had based his denial on the fact that Attorney Blitstein had previously been suspended from the practice of law in his home state for 45 days when he was accused of trying to bilk a client out of $35,000.

---

[2] These motions to disqualify are significant to the court's inquiry, because Mr. Biss goes to great lengths to point out that in his "almost thirty" years of practice, no one has ever opposed a pro hac vice motion against him. That may be true, but several persons have filed motions to disqualify against Mr. Biss for a variety of reasons.

Judge Efvin invited Mr. Blitstein to explain his legal troubles, and Blitstein did so by telephone. Judge Efvin made an independent inquiry, and in his subsequent affidavit, he wrote that Blitstein attempted to "minimize[e] these events" in his discussion. Reviewing on an abuse of discretion standard, the Second Circuit ruled that "the decision not to admit Blitstein was amply supported by uncontradicted evidence" and "Judge Efvin acted well within his discretion." In In Re Rappaport, 558 F.2d 87 (2d Cir 1977).

In the present case, the applicant's disciplinary history is uncontradicted. Denial of the pro hac vice motion is amply supported. Mr. Biss has a significant disciplinary history, and his explanation has been, at best, less than candid. At worst, Mr. Biss' explanations are deceptive.

**B.  Response to Biss' Deceptive Footnotes**

In footnotes in his opposition memo, Mr. Biss states that certain statements made by this defendant are "untrue." Each of these denials is false, and the evidence offered is also false or deceptive.

In fn 2 of his Opposition to Motion to Disqualify, Biss claims that "it is untrue" that he filed a "frivolous lawsuit" over an "imaginary cow.[3]" In support of his claim, Biss points to a still-pending county court case Nunes v. Twitter, Case CL19-1715 (Henrico County Virginia). However, Mr. Biss fails to mention that the court already dismissed his primary target in the case – Twitter. And while it is true that the decision had been appealed, the Virginia Supreme Court has already ruled against Mr. Biss, and the dismissal of Twitter is final.

---

[3] Mr. Biss filed a lawsuit against Twitter alleging that Twitter defamed Congressman Devin Nunes (R-CA) via the anonymous account known as "Devin Nunes' Cow." Apparently, the imaginary cow (@DevinCow) posted several pun-based humorous insults of the congressman. It seems that Mr. Biss wrongly concluded that Twitter could be held responsible for the imaginary cow tweets.

Also in fn 2, Biss denies that <u>Ray v. Citigroup</u> was "wholly meritless" as described by this defendant.   This was the lawsuit filed by Biss in Illinois on behalf of dozens of people without their knowledge, and for which he was admonished by a federal judge.  Mr. Biss asserts that his suit was not meritless, because a motion to dismiss was "denied in part." What Mr. Biss is concealing from the court is the fact that Judge Kennelly actually granted summary judgment to all of the defendants in that case because the lawsuit had no merit:

> . . . the Court grants defendant's motion for summary judgment [docket no. 154].
> All other pending motions are terminated [docket no. 158, 176]. The Clerk is
> directed to enter judgment in favor of the defendants.

<u>Ray v. Citigroup</u>, 1:03-cv-03157 Doc #: 181 (10/18/05).  A copy of the decision is attached as

**Exhibit D**.

In fn 3, Biss specifically denies that he pursued additional litigation against certain defendants after being admonished by a federal judge.   This defendant had pointed out that Biss filed post judgment litigation against the same defendant after being admonished of the risk of sanctions by U.S. District Judge Leonie Brinkema who wrote:

> *The actions of improper behavior by Biss are undoubtedly more severe than those of [his*
> *client], and should Biss file further inappropriate pleadings or pursue frivolous post*
> *judgment litigation against any of these defendants, sanctions might well be justified.*

<u>Lokhova v. Halper et al</u>, 1:19-cv-00632 (E. D. Va. 2019) – Order February 27, 2020.

A simple check of the federal docket on PACER shows that the denial of additional litigation is false.

In truth, ten months later, on December 31, 2020, Mr. Biss filed new litigation against Mr. Halper in the same jurisdiction.  See <u>Lokhova v. Halper</u>, 1:2020cv01603  (E. D. Va. 2020).[4] Although he did not actually serve Mr. Halper with the lawsuit, a waiver of service was filed by Mr. Halper's counsel on March 9, 2021.  A copy of the docket sheet is attached as Exhibit E.

This is important.  On March 10, 2021, Attorney Ryan Biss claimed to this Court that there was no new lawsuit filed by Steven Biss against Stefan Halper.  See Document 28, fn. 3. However, we now know that Biss had filed a suit against Halper on December 31, 2020, and that a Waiver of Service had been filed in that new suit just one day earlier.  <u>Lokhova v. Halper</u>, 1:2020cv01603  (E. D. Va. 2020).  This might seem a little off-topic, but it is highly demonstrative of Mr. Biss' lack of moral character, trustworthiness, civility.  It also shows that Mr. Biss cannot take a not-so-subtle hint from a federal judge.

In these two footnotes, the filing party accuses this defendant of falsehoods.  However, a simple review of PACER, or the Virginia court docket corroborates all of the facts cited by the defendant.   This documented effort at gaslighting by counsel is staggering.  I cannot fathom how one can litigate in good faith with legal counsel who cannot communicate truthfully.

## C.  New Information Which Warrants Denial of the Pro Hac Vice Application

Since filing the Pro Hac Vice application, other issues have come to light which further warrant denial of the pro hac vice petition.

First, Mr. Biss became the subject of Federal Rule 11 sanctions in the Eastern District of Virginia.  In September 2020, in <u>Indeco v. Meador</u>, E.D. Va 1:20-cv-01073-TSE-TCB, Mr. Biss

---

[4] Mr. Biss did not describe Mr. Halper as a ratf**ker in the 2020 Complaint, though he had done so in ¶1 of the 2019 Complaint.

filed a lawsuit on behalf of Indeco Union.  Unfortunately, it appears that Indeco Union was in bankruptcy at that time.  Worse still, it appears that Mr. Biss specifically acknowledged that he never conferred with Indeco Union before filing suit.  In early January 2021, the federal court appears to have made an inquiry as to whether Indeco should be dismissed with prejudice or without prejudice.  As of January 19, 2021, a Trustee was appointed for Indeco Union. As of that date, whatever questionable authority Mr. Biss may have had to act on behalf of Indeco Union was extinguished.

Accordingly, when Mr. Biss filed the Notice of Voluntary Dismissal on behalf of Indeco Union on January 25, 2021, he was not legally authorized to do so.  Most troublingly, when Mr. Biss filed the unauthorized dismissal, he did so without contacting Indeco Union or the Trustee of Indeco Union and without informing the court of the legal posture of Indeco Union as a result of the bankruptcy case(s).

Thereafter, defendant Meador requested that the court enter an order of Rule 11 sanctions against Mr. Biss.  See Indeco v. Meador, E.D. Va 1:20-cv-01073-TSE-TCB Document 23 (03/02/21).

> Meador submits that Mr. Biss' actions have caused unnecessary delay, increased the cost of litigation and his filing was a known, legal nullity. These are the very things which Rule 11 is meant to eliminate. Meador submits that, given the totality of the circumstances, it is appropriate to sanction Mr. Biss and require him to pay reasonable attorneys' fees and costs incurred in addressing the improperly filed Notice of Voluntary Dismissal.

Id.

As of the date of this filing, the motion remains pending in the Eastern District of Virginia. See **Exhibit F.**

We respectfully submit that this issue is relevant, given that Mr. Biss had previously been admonished by a federal judge for unauthorized legal filings. See <u>Ray, et al v. Citigroup Global, et al</u> 1:03-cv-03157 (N.D.Ill.2003).

Second, we are informed that Mr. Biss is or may shortly be the subject of a motion for sanctions in West Virginia.  We are informed that Mr. Biss filed a defamation complaint in the Jefferson County Circuit Court (WV), without first seeking admission to that jurisdiction.  See <u>Levine v. Jefferson County Perspective, Inc</u>, Civ. Action No. CC-19-2020-C-129, (WV, Jefferson County Cir. Court, 2019).   This would seem inconsistent with the applicant's claim to this Court that he is already admitted *pro hac vice* in Jefferson County.[5]  This fact is significant because it appears that Mr. Biss may have deceived this Court; and also because it demonstrates that Mr. Biss has a pattern of disregarding court rules.

### D.  Personal Animus

Mr. Biss incorrectly asserts that the basis for the motion to disqualify was a personal animus toward Mr. Trimarco "which bled over to Mr. Biss."

Biss seems to believe that this defendant's alleged defamatory statements were personal.  Biss wrote, "Farley's statements evince an animosity, hatred, spite and ill-will for Plaintiff that is rarely seen, let alone expressed in letters to third-parties."

To be clear, this defendant has no personal animosity toward Mr. Trimarco.  The statements were truthful,[6] and were made in a business context.  The statements were made to third parties

---

[5] A search of the West Virginia bar database for pro hac vice applications seems to indicate that Mr.Biss is not admitted pro hac vice in Jefferson County.
[6] The veracity of the statements is evidenced by the fact that similar statements were included as allegations against the plaintiff in <u>Cicolini v. Trimarco</u>, Ontario Superior Court.  In that case, Mr. Trimarco has been defaulted.

to correct misstatements made by Mr. Trimarco.  Mr. Trimarco had asserted ownership of, or extra-judicial authority over, certain assets.  Mr. Trimarco had made these claims to third parties.  In response to the actions of Mr. Trimarco, this defendant made it clear to those persons that Mr. Trimarco did not have such ownership or authority.

Similarly, this defendant has no personal animosity toward Mr. Biss.  In my twenty-two uninterrupted years of practice, I have never opposed a pro hac vice, and never moved to disqualify another attorney.  I don't recall ever filing a motion for Rule 11 sanctions against a fellow member of the bar.

But this matter is different.  I have never encountered an attorney with the disciplinary record of Mr. Biss.  These statements are not mere "aspersions."  Every single fact cited in these papers is accurate and directly relevant to the only issue before the court: Does Mr. Biss have the moral character, civility, truthfulness or competence to practice law in Delaware?

There is ample documented evidence that throughout his career, Mr. Biss has committed deliberately wrongful acts, has assisted clients with conduct that he should have known was criminal or fraudulent, has given testimony that was riddled with misrepresentations. In addition, there is evidence available from two individuals who have submitted sworn affidavits that Mr. Biss has resorted to extortion to extract favorable witness testimony.  It is plain that Mr. Biss has used litigation in improper efforts to obtain leverage over other persons.  Mr. Biss has also been

---

The veracity is further evidenced that these statements were also included as allegations in <u>Uptempo v. Trimarco</u> in the Delaware Chancery Court.

the subject of several sanctions petitions and judicial admonitions, none of which had the desired effect of modifying his behavior.[7]

Mr. Biss is the kind of lawyer that our law school professors warned us about, and told us not to become.

As a litigant in federal court, a pro se party should be able to litigate with opposing counsel who play by the rules, who are honor bound to a code of ethics, and who are committed to doing justice. The United States District Court has a duty to ensure that all attorneys admitted to practice before it have sufficient moral character, truthfulness, civility and competence. Permitting someone with the disciplinary history of Mr. Biss to practice in Delaware will have the deleterious effect of eroding confidence in the judiciary.

The Third Circuit Court of Appeals has stated clearly that a District Court may exercise discretion to deny pro hac vice privileges to an out of state attorney where the attorney's behavior has been "uncivilized and unprofessional and has resulted in reprimands, mistrials and wasted judicial time." See Jacob v. National RR Passenger Corp, 63 Fed App 610 (3d Cir. 2003).

## II.   CONCLUSION

Mr. Biss lacks the character, trustworthiness, civility and competence to practice in the Delaware federal court. For all of the reasons cited in this Defendant's papers, we respectfully urge the court to exercise its discretion, and deny Mr. Biss' *pro hac vice* application.

---

[7] On p. 4 of his opposition memo, it was written that "Mr. Biss is regularly commended by Federal and State Courts for his performance." This defendant has practiced in state and federal courts for 23 years, and is unfamiliar with the performance commendations described by counsel. Perhaps these performance commendations are a feature unique to the courts where Mr. Biss practices. Regardless, the defendant respectfully notes that no such performance commendations were offered as evidence or described with any specificity.

WHEREFORE, the defendant respectfully requests that the court:

a. Conduct a hearing with witnesses to determine whether Mr. Biss possesses the moral character, truthfulness, civility and competence expected of attorneys practicing in Delaware federal court; or

b. That any *pro hac vice* motion be denied; and/or

c. That the court enter such other relief as deemed appropriate.

The defendant, pro se

/s/Michael Farley
Michael Farley
One Courthouse Square
Newport, RI 02840
mfarleyesq@yahoo.com
401-835-8775

## CERTIFICATION

The defendant certifies that it delivered a copy of the foregoing document via electronic mail to opposing counsel on March 13, 2021 to the following addresses:
Ryan Ernst, Esq. rernst@oelegal.com

/s/Michael Farley

# Exhibit A

VIRGINIA:

IN THE CIRCUIT COURT OF THE COUNTY OF CHESTERFIELD

VIRGINIA STATE BAR, EX REL
THIRD DISTRICT COMMITTEE

          Complainant

v.                                      Case No. CL07-1846

STEVEN SCOTT BISS

          Respondent.

## MEMORANDUM ORDER
## (SUSPENSION—ONE YEAR AND ONE DAY)

    This matter came to be heard on October 14-17, 2008 before a three-judge panel duly appointed by the Supreme Court of Virginia pursuant to § 54.1-3935 of the Code of Virginia. The panel consisted of The Honorable Pamela S. Baskervill, Chief Judge Designate, The Honorable Von L. Piersall, Jr., Retired Judge, and The Honorable Joseph E. Spruill, Retired Judge. The Virginia State Bar was represented by Kathryn R. Montgomery, Assistant Bar Counsel. The respondent, Steven Scott Biss ("Respondent") was represented by John B. Russell, Jr. The proceedings were transcribed by Tracy J. Johnson, RPR, CCR of Chandler & Halasz, Certified Professional Reporters, telephone number 804-730-1222.

    Judge Baskervill polled the members of the panel as to whether any knew of any personal or financial interest or bias that would preclude the member from fairly hearing the matter, to which inquiry each member of the panel responded in the negative.

    The matter came before the Court on a Subcommittee determination from the Third District—Section III (Virginia State Bar docket number 05-033-0055) alleging

1

misconduct in violation of the following Rules of Professional Conduct: Rule 1.1—
Competence, Rule 1.2(c)—Scope of Representation, Rule 1.15(c)(4)—Safekeeping
Property, Rule 8.1(a) and (d)—Bar Admission and Disciplinary Matters, and Rule 8.4(b)
and (c)—Misconduct.

Following the Court's denial of Respondent's motion to strike the bar's case, the
parties stipulated to certain facts and rules violations. Upon the joint motion of the
parties, the Court accepted the stipulation of facts and violations of rules. The Court
notes that in consideration for the bar's stipulation, Respondent waived any appeal of any
findings by this Court, including any sanction imposed upon him.

I. FINDINGS OF FACT AND RULE VIOLATIONS

Upon consideration of the testimony, documentary evidence, arguments of
counsel, and stipulations of facts and rule violations, the Court found that the bar proved
the following facts and rule violations by clear and convincing evidence:

1. In the fall of 2002, Respondent represented Cyberian Enterprises Limited
("Cyberian"), a Hong Kong company, in its efforts to purchase several million shares of
stock in BrandAid Marketing Corporation ("BrandAid"), a Delaware corporation,
through a Subscription Agreement. In conjunction with this representation, Respondent
agreed to hold BrandAid shares in escrow until he received the purchase price from
Cyberian.

2. Respondent subsequently made numerous representations to BrandAid that
funds from Cyberian were imminently forthcoming.

3. In the spring of 2003, Cyberian disclosed to BrandAid that it did not have the
funds to purchase BrandAid's shares and proposed that BrandAid merge with a Cyberian-

related company and accept Chinese real estate for its stock ("the Artz Proposal").

BrandAid did not act on the offer.

4. Respondent subsequently orchestrated a cashless takeover attempt of

BrandAid. In May 2003, Respondent solicited proxies of BrandAid shareholders in

violation of federal securities law and subsequently purported to vote those shares to

replace BrandAid's management with Cyberian affiliates and approve Cyberian's

proposal. Pursuant to this purported approval of the proposal, Respondent then

transferred the escrowed BrandAid shares to Cyberian.

5. Respondent breached his fiduciary duties in connection with the escrow as

follows:

- On May 23, 2003 and again on May 29, 2003, Respondent purported to serve a written consent on behalf of BrandAid shareholders in favor of extraordinary corporate events (replacing the BrandAid management and approving the Artz Proposal). At this time, the Subscription Agreement was in force, Cyberian had not paid for the BrandAid shares, and Respondent was supposed to be holding the shares in escrow until paid for. Respondent purported to have authority to serve the written consent by virtue of holding proxies for a majority of BrandAid shareholders. However, Respondent did not comply with federal securities laws in obtaining or exercising the proxy votes.

- On or about May 30, 2003, Respondent delivered the shares of BrandAid to Cyberian without having first received payment pursuant to the Subscription Agreement and the Addendum to the Subscription Agreement.

In so doing, Respondent committed deliberately wrongful acts that reflect

adversely on his fitness to practice law in violation of Rule 8.4(b) of the Rules of

Professional Conduct.

6. In both soliciting and exercising the proxies from BrandAid shareholders,

Respondent violated federal securities laws as follows:

3

- Respondent solicited proxies from BrandAid shareholders without concurrently providing them with a proxy statement and without concurrently filing a proxy statement with the SEC.

- Respondent filed the proxy statement with the SEC after he had voted the proxy shares by written consent.

- On May 23, 2003, Respondent voted or attempted to vote the proxy shares by written consent without first disclosing to the SEC or the public his intent to replace BrandAid's directors and officers, merge BrandAid with another company, and accept the Artz Proposal, all of which constitute extraordinary corporate events.

- The proxy statement filed by Respondent failed to disclose that Respondent had reason to believe that his stockbroker clients, who had assisted him with the proxy solicitation, and their clients may have stood to earn a significant finder's fee if the sale of BrandAid stock to Cyberian was consummated.

- Respondent did not file the Schedule 13D with the SEC until June 13, 2003, more than 10 days after May 23, 2003, the day he claimed to hold a beneficial ownership of BrandAid and the day he voted or attempted to vote the proxy shares by written consent. This delay in filing is material because in the interim, Respondent voted or attempted to vote the shares to effect extraordinary corporate changes.

In so doing, Respondent demonstrated a lack of competence to represent his client in the area of corporate and securities law and a lack of competence to represent BrandAid shareholders as a lawyer who solicited and exercised their proxy votes in violation of Rule 1.1 of the Rules of Professional Conduct.

7. Respondent assisted Cyberian in conduct he should have known was criminal or fraudulent as follows:

- Respondent made repeated assurances to BrandAid that he soon would receive funds from Cyberian to pay for the BrandAid stock under the terms of the Subscription Agreement, when in fact he should have known that Cyberian would not be transmitting any funds.

- By breaching his fiduciary duties in connection with the escrowed BrandAid shares and by violating federal securities laws in connection

4

with soliciting and exercising BrandAid proxy votes, Respondent assisted Cyberian in a cashless takeover of BrandAid.

In so doing, Respondent assisted a client in conduct that he should have known was criminal or fraudulent in violation of Rule 1.2(c) of the Rules of Professional Conduct.

8. Respondent's testimony before the United States District Court for the Southern District of New York contained misrepresentations as follows:

- Respondent testified that he "had no clue" what "assets were going to be tendered" by Cyberian to pay for the shares of BrandAid, and that it was not until May 27, 2003 that he learned Cyberian was paying for the BrandAid shares with Chinese real estate instead of cash.

In so testifying, Respondent committed a deliberately wrongful act that reflects adversely on his fitness to practice law in violation of Rule 8.4(b) of the Rules of Professional Conduct.

## II. SANCTION

The Court received evidence of mitigation and heard arguments of counsel regarding the appropriate sanction. The Court then deliberated and announced the sanction as a suspension of Respondent's license to practice law of one year and one day, the suspension to begin on January 1, 2009.

Accordingly, it is ORDERED that the law license of the respondent, Steven Scott Biss, be SUSPENDED for one year and one day effective January 1, 2009.

It is FURTHER ORDERED that Respondent shall comply with the requirements of Part Six, Section IV, Paragraph 13(M) of the Rules of the Supreme Court of Virginia. Respondent shall forthwith give notice by certified mail, return receipt requested, of the Suspension of license to practice law in the Commonwealth of Virginia, to all clients for

5

whom Respondent is currently handling matters and to all opposing attorneys and presiding judges in pending litigation.   Respondent shall also make appropriate arrangements for the disposition of matters in Respondent's care in conformity with the wishes of his clients. Respondent shall give such notice within 14 days of the effective date of the Suspension, and make such arrangements as are required herein within 45 days of the effective date of the Suspension.  Respondent shall also furnish proof to the bar within 60 days of the effective date of the Suspension that such notices have been timely given and such arrangements made for the disposition of matters.  If Respondent is not handling any client matters on the effective date of the Suspension, he shall submit an affidavit to that effect to the Clerk of the Disciplinary System at the Virginia State Bar. All issues concerning the adequacy of the notice and arrangements required by Paragraph 13(M) shall be determined by the Virginia State Bar Disciplinary Board, unless Respondent makes a timely request for hearing before a three-judge Circuit Court.

It is FURTHER ORDERED that the Clerk of the Disciplinary System shall comply with all requirements of Part Six, Section IV, Paragraph 13 of the Rules of the Supreme Court, as amended (the "Rules"), including but not limited to assessing costs pursuant to Paragraph 13(B)(8)(c) of the Rules and complying with the public notice requirements of Paragraph 13(B)(8)(d) of the Rules.

It is FURTHER ORDERED that the Clerk of the Circuit Court shall serve a copy teste of this Memorandum Order on the Respondent, at 36 Bear Alley, Suite 400, Petersburg, Virginia 23803, his last address of record with the Virginia State Bar, and shall mail a copy to counsel of record.

The Court HEREBY DISMISSES all other disciplinary rule violations charged but not found.

The Court notes that this Memorandum Order relates only to the misconduct charges brought against Respondent by the Virginia State Bar.  The Court's decision and findings are not meant to resolve any issues in any other civil, criminal, or other matters.

ENTERED:

This 26th day of November 2008.


_____
Chief Judge Designate


_____
Judge


_____
Judge


7

# Exhibit B

VIRGINIA:

BEFORE THE DISCIPLINARY BOARD
OF THE VIRGINIA STATE BAR

IN THE MATTER OF
STEVEN SCOTT BISS                    VSB Docket No. 09-032-078962

### ORDER OF SUSPENSION

This matter came on to be heard on September 25, 2009, before a panel of the

Virginia State Bar Disciplinary Board (the "Board") comprised of William Ethan Glover,

1st Vice Chair; Pleasant S. Brodnax, III; Sandra L. Havrilak; David R. Schultz, and Dr.

Theodore Smith, lay member, at the State Corporation Commission, courtroom A, Tyler

Building, 1300 East Main Street, Richmond, Virginia 23219.

The Virginia State Bar ("the Bar") was represented by Kathryn R. Montgomery,

Assistant Bar Counsel ("Bar Counsel"). Steven Scott Biss (the "Respondent") appeared

and was not represented by counsel. Tracy J. Johnson, Registered Professional Reporter

of Chandler & Halasz, P. O. Box 9349, Richmond, Virginia 23227, (804-730-1222),

having been duly sworn by the Chair, reported the hearing.

The Chair inquired of the members of the panel whether any of them had any

personal or financial interest or any bias which would preclude, or could be perceived to

preclude, their hearing the matter fairly and impartially. Each member of the panel and

the Chair answered the inquiry in the negative.

The matters came before the Board on the Certification by the Subcommittee of

the Third District Committee of the Virginia State Bar. On June 19, 2009, the

Subcommittee of the Third District Committee held a meeting and certified multiple

Charges of Misconduct against the Respondent to the Virginia State Bar Disciplinary

Board. The Certification of these charges was sent to Respondent on June 30, 2009.

Bar Counsel and Respondent stated that they were prepared to proceed and

waived the Chair's explanation of the hearing procedure.

The Certification alleged that Respondent engaged in the following acts of

misconduct:

**RULE 3.4      Fairness To Opposing Party And Counsel**

A lawyer shall not:

(d)     Knowingly disobey or advise a client to disregard a standing rule or a
ruling of a tribunal made in the course of a proceeding, but the lawyer may
take steps, in good faith, to test the validity of such rule or ruling.


**RULE 5.5      Unauthorized Practice Of Law**

(a)     A lawyer shall not:

(1)     practice law in a jurisdiction where doing so violates the regulation
of the legal profession in that jurisdiction.

**RULE 8.4      Misconduct**

It is professional misconduct for a lawyer to:

(c)     engage in conduct involving dishonesty, fraud, deceit or misrepresentation
which reflects adversely on the lawyers fitness to practice law.

On July 21, 2009, Respondent filed his Answer and Response to Subcommittee

Determination (Certificate) that included affirmative defenses. On September 14, 2009

Respondent filed his Special Pleas, Demurrers and Motion to Dismiss (hereinafter

"Motion to Dismiss"). Bar Counsel filed her Opposition to Respondent's Special Pleas,

Demurrers and Motion to Dismiss (hereinafter "Opposition") on September 24, 2009.

The Bar offered the Memorandum Order of November 26, 2008, that was received into evidence, without objection, as part of her Opposition. Respondent offered the Investigative Report of August 6, 2009; Bar Counsel's letter to the Clerk's Office dated April 27, 2009; and the case of <u>Kentucky Bar Association v. Harris</u>, 269 S.W.3d 414, (2008), which were received as part of his Motion to Dismiss, without objection.

On November 26, 2008, Respondent's license to practice law was suspended for a period of one (1) year and one (1) day effective January 1, 2009. (VSB Exhibit 2). Respondent's Motion to Dismiss was predicated on the adjudication of a show cause order that Bar Counsel filed against him and was resolved by the Virginia State Bar Disciplinary Board Summary Order on April 24, 2009. Prior to the pending certification against Respondent, Bar Counsel filed a Petition for Paragraph 13.M Show Cause Hearing pursuant to Part Six, Section IV, Paragraph 13.M (now 13-29) of the <u>Rules of the Supreme Court of Virginia</u>, as amended, alleging that Respondent had violated the Memorandum Order that suspended his license by failing to make appropriate arrangements for the disposition of matters that are in his care; continuing to act as an attorney despite his suspension; and, that his actions after January 1, 2009, constituted the unauthorized practice of law by an attorney whose license is suspended. A Rule to Show Cause was issued and a hearing was held before the Board on April 24, 2009. After a hearing, by Summary Order, the Board found that "no disciplinary rule violations have been proved by clear and convincing evidence." Additionally, by Memorandum Order dated May 4, 2009, the Board found by clear and convincing evidence that Respondent complied with Part Six, Section IV, Paragraph 13(M) of the <u>Rules of the Supreme Court of Virginia</u>, and the Rule to Show Cause was dismissed.

3

Subsequently, on June 19, 2009, a subcommittee of the Third District Committee issued a certification of Charges of Misconduct to the Board for hearing, specifically, whether Respondent committed misconduct by violating the following Rules of Professional Conduct: Rule 3:4(a), Rule 5.5(a)(1) and Rule 8:4(c).

In his Motion to Dismiss, and as argued to the Board, Respondent argued that the certification was barred by the doctrine of *res judicata* pursuant to Rule 1:6 of the <u>Rules of the Supreme Court of Virginia</u>. He further argued that the Summary Order entered on April 24, 2009, states that "no disciplinary rule violations have been proved by clear and convincing evidence, and accordingly, all charges of misconduct are hereby dismissed." No appeal was taken, therefore, the Order was final. Respondent argued that the present matters were barred by *res judicata* because they are based on the same facts, same parties and same cause of action as those litigated in the show cause proceeding.

Respondent also took the position that he had no legal or ethical duty to advise Farm Bureau that his license to practice law had been suspended effective January 1, 2009 and that because the suspension was a matter of public record, he could not hide it from anyone. Further, Respondent stated that he removed "Attorney at Law" from his letterhead.

Respondent also stated that he did not violate Rule 3:4(a) because the "proceeding" in which the Memorandum Order was entered was long over before the January/February 2009 time period and because he was not a "lawyer" when he emailed the Farm Bureau agent in January/February 2009. Respondent asserted that he did not violate Rule 5:5(a)(1) because he did not engage in the unauthorized practice of law and he did not advise and/or negotiate a claim for compensation.

4

Bar Counsel's Opposition and argument to the Board asserted that Part Six, Section IV, Paragraph 13 of the <u>Rules of the Supreme Court of Virginia</u>, does not allow motions practice, therefore, Respondent's Motion to Dismiss should be dismissed and denied; or, alternatively, that the doctrine of *res judicata* does not apply to attorney disciplinary proceedings. Bar Counsel also argued that even if the doctrine of *res judicata* did apply it is inapplicable to the present case because Bar Counsel could not have brought the current charges of misconduct in the previous Paragraph 13.M show cause proceedings and because the Board did not render a final judgment on the merits of any charges of misconduct alleged against Respondent. Bar Counsel conceded that the same facts that were relied upon in support of the Show Cause, were used to support the present disciplinary violations. In fact, the alleged Rule 3.4(d) violation is the same violation Respondent defended in the Show Cause proceeding as the 13(M) violation.

The Board also received the transcript of the April 24, 2009 hearing as part of Respondent's exhibits.

The Board recessed the proceedings to deliberate. After due deliberation, the Board unanimously found that the charges that Respondent violated Rules 3:4(a) and 5:5(a)(1) were barred by the Summary Order of April 24, 2009 and Order of May 4, 2009; therefore those charges were dismissed.

The Board also found that the allegation of Respondent's misconduct under Rule 8:4(c) was not barred by the Summary Order of April 24, 2009 or the Order of May 4, 2009, and a hearing was held on that remaining charge of misconduct.

The Bar's Exhibits 1 through 10 and Respondent's Exhibits 1-5 were admitted into evidence, without objection.

5

Joint Stipulations of Fact between the Bar and Respondent were received. (Bar Exhibit 9).

The Bar also submitted the *de bene esse* deposition of Gregory Williams dated September 14, 2009, without objection (Bar Exhibit 8) and rested. Mr. Williams is a field claim representative for the Virginia Farm Bureau Insurance Company and was assigned to the case of Judy Guthrie. According to Mr. Williams, he worked with Respondent from December 2008 through February 2009 on this case. Mr. Williams testified that during the time period, he believed Respondent was an attorney and he did not note the letterhead change until brought to his attention in the Show Cause hearing. According to Mr. Williams, Respondent never advised him of his change in status. The last contact he had with Respondent was February 17, 2009. Mr. Williams also testified he first learned of Respondent's suspension in March 2009 when he received notice from the law firm of Paris, Black and Brown advising that they were representing Mrs. Guthrie and enclosed a copy of the State Bar newsletter stating Respondent was suspended. Mr. Williams also testified that if he knew Respondent's law license was suspended, he would have made sure that the Guthries were present or gave permission to Respondent to handle the case. Mr. Williams was concerned whether or not the Guthries knew Respondent's law license was suspended because of "The legalities of this, you know, me discussing someone else's personal situation with somebody who is no longer an attorney but still representing himself as an attorney to settle this matter."

The Bar rested its case and Respondent moved to strike the Bar's case on the basis that they had presented no evidence of affirmative misrepresentation by the Respondent and that Respondent had no duty to advise a third party that he was

6

suspended from the practice of law.  Respondent argued that his only duty was to not make an affirmative misrepresentation to third parties regarding his suspension, and renewed his motion based on the ground of *res judicata*.  The Board denied Respondent's motion to strike.

Respondent presented his case.  He called Joseph Guthrie to testify.  Mr. Guthrie is a former client and the husband of Respondent's client, whom he allegedly represented after his license to practice law was suspended.  Mr. Guthrie testified that Respondent represented him and his wife for over six to seven years and that he considered him a friend.  Mr. Guthrie said he was aware of Respondent's suspension, as he testified at the disciplinary proceedings in November, 2008.  Mr. Guthrie stated that Respondent never acted as an attorney for him and his wife beyond December 31, 2008 and that he was only acting as their agent.  Respondent repeatedly advised them that he could not give legal advice and did not charge him for the services provided.  Mr. Guthrie affirmed his statements in Respondent's Exhibit 4.  Mr. Guthrie testified that Respondent never gave advice on settlement of the case.  Mr. Guthrie could not explain why Mr. Williams called his wife "Mr. Biss' client."  Mr. Guthrie further testified that after February 17, 2009, his wife hired an attorney to represent her in her claim.

Respondent also testified and presented evidence on his own behalf.  Respondent testified that he was forty-four (44) years old and was licensed to practice law in 1991.  Since 2000, he was a sole practitioner and earned multiple multi-million dollar jury awards.  He stated he had an entirely "unblemished record" until 2002-2003 when he committed "serious errors of judgment" that lead to his suspension in 2008.

7

Respondent testified that he fully complied with the Order of Suspension. He maintained that the Guthries were not his clients; and, after January 1, 2009, he was acting as a mere agent. Respondent testified that after January 1, 2009, he changed his letterhead, eliminated any reference to being an attorney and called Judy Guthrie "my principal." (Bar Exhibit 5).

Respondent reluctantly acknowledged that he never informed Mr. Williams that his license was suspended, nor did he correct the error of Mr. Williams when he called Mrs. Guthrie his client. (Bar Exhibit 6). Rather, Respondent believed by removing "Attorney at Law" from his letterhead and calling Mrs. Guthrie his principal, was sufficient. In fact, Respondent testified that Mr. Williams could have found out himself that he was suspended, as he heard about Respondent's suspension from a third party. Respondent acknowledged that in 2008, he was Mrs. Guthrie's lawyer for twenty-two (22) days and in 2009 his change to non-lawyer/agent would be invisible to Mr. Williams. He assumed Mr. Williams would figure it out.

Respondent also testified that although he could have told Mr. Williams that he was not an attorney, there was no way that he could have hidden the fact that he was suspended from the practice of law. He also testified that while he does not believe that he had a duty to notify the insurance company regarding his suspension, he recognizes that he should have done things differently and perhaps not have done any work on behalf of the Guthrie family.

Based on the Stipulations of Fact, the Bar's Exhibits, Respondent's Exhibits, the testimony presented, and the argument of counsel and Mr. Biss, the Board finds as follows:

8

## I. <u>FINDINGS OF FACT</u>

1.      Respondent was licensed to practice law in the Commonwealth of Virginia on September 30, 1991.

2.      On November 26, 2008, a three-judge panel sitting in the Circuit Court for the County of Chesterfield entered a Memorandum Order suspending Respondent's license to practice law for one year and one day.  The suspension was effective January 1, 2009. (VSB docket number 05-033-0055).  (Bar Exhibit 2).

3.      On December 9, 2008, Respondent sent a letter to Mary J. Tomillon and John M. Tomillon stating that he represented Judy B. Guthrie in connection with her claims against them and their son relating to a crash that occurred on August 8, 2008. Respondent asked the Tomillons to forward his letter to their insurer so that "we can begin a dialogue about settlement." (Bar Exhibit 3).

4.      Despite his suspension effective January 1, 2009, Respondent continued to represent Mrs. Guthrie in this matter throughout January and February, 2009.

5.      On January 12, 2009, Respondent sent an e-mail to Gregg Williams, a claims adjuster at Virginia Farm Bureau (the Tomillons' insurer).  Attached to the e-mail with Mrs. Guthrie's medial reports, bills, and wage loss verification.  (Bar Exhibit 4).

6.      On January 21, 2009, Respondent sent a letter to Gregg Williams asking about the status of his evaluation of Mrs. Guthrie's claim.  The letter did not identify Respondent as an attorney at law; and, referred to Mrs. Guthrie as "my principal" not my client. (Bar Exhibit 5).

7.      On February 17, 2009, Respondent engaged in an e-mail exchange with Gregg Williams concerning Mrs. Guthrie's condition and the status of settlement.  At no

time did Respondent correct Mr. Williams' statement that Mrs. Guthrie was his client. (Bar Exhibit 6).

8.     Respondent never advised Mr. Williams that his license to practice law had been suspended on January 1, 2009.

9.     By continuing to represent Judy Guthrie in negotiations with Farm Bureau, and by failing to disclose to Farm Bureau that his license to practice law had been suspended effective January 1, 2009, Respondent violated Rule 8.4 (c) of the Rules of Professional Conduct.

## II.  MISCONDUCT

The Certification asserts such conduct by Steven S. Biss constitutes misconduct in violation of the following provision of the Rules of Professional Conduct:

**RULE 8.4     Misconduct**

It is professional misconduct for a lawyer to:

(c)     engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law;

## III.  DISPOSITION

Upon consideration of the foregoing, that based on the Stipulations of Fact, the Exhibits received into evidence from the Bar and Respondent, upon the testimony presented, and the argument of counsel and Respondent, the Board recessed to deliberate. After due deliberation, the Board recommended and stated it findings that the Bar had proved by clear and convincing evidence a violation of Rule 8.4 (c) of the Rules of Professional Conduct as charged in the Certification.

## IV. <u>SANCTION</u>

The Board called for evidence in aggravation or in mitigation of the misconduct found. The Bar presented the Certification of Respondent's disciplinary record that consisted of a One Year and One Day Suspension effective January 1, 2009 issued in an attorney disciplinary proceeding.

Respondent presented testimony on his own behalf and the testimony of Joseph Guthrie and Elliot Purcell Park who testified as to their views of Respondent as an attorney and person.

Mr. Guthrie testified that Respondent was actively representing him on at least four (4) matters prior to December 31, 2008. That Respondent's suspension has been devastating to him. He testified that Respondent never made a false statement and never held himself out as a lawyer subsequent to December 31, 2008.

Mr. Park is an attorney in Virginia and has known Respondent for nineteen (19) years. Since January 1, 2009, Respondent has worked for Mr. Park on a daily basis as a paralegal. While Mr. Park knew Respondent was suspended, he purposely remained ignorant of the facts and charges. According to Mr. Park, Respondent is a brilliant attorney and he clearly understands that he is not a lawyer and not allowed to provide legal advice. According to Mr. Park, Respondent is known for his truthfulness and veracity.

Respondent also testified on his own behalf. Respondent testified that other than the current suspension, he had an unblemished disciplinary record. That the current complaint was from Bar Counsel and not a member of the public. That he took affirmative steps to change his letterhead and to call Mrs. Guthrie his principal. He

maintained that he did not take any affirmative action to correct the impression of Mr. Williams that he was still a licensed attorney. Respondent also acknowledges that it was hard to just stop being an attorney and that he should have been more forthright about his status.

Bar Counsel and Respondent presented argument.

The Board recessed to deliberate what sanction to impose upon its finding of misconduct. After due deliberation in closed session, the Board reconvened in open session. The Chair announced the Board's unanimous decision that the Respondent's license to practice law in the Commonwealth of Virginia should be suspended for thirty (30) days to commence at the end of his current suspension.

It is therefore ORDERED that the license of the Respondent Steven Scott Biss, to practice law in the Commonwealth of Virginia be and the same hereby is suspended for a period of thirty (30) days, effective January 1, 2010.

It is further ORDERED that Respondent must comply with the requirements of Part 6, § IV, ¶ 13 M. of the Rules of the Supreme Court of Virginia. The Respondent shall forthwith give notice by certified mail, return receipt requested, of the suspension of his license to practice law in the Commonwealth of Virginia, to all clients for whom he is currently handling matters and to all opposing attorneys and presiding judges in pending litigation. The Respondent shall also make appropriate arrangements for the disposition of matters then in his care in conformity with the wishes of his client. Respondent shall give such notice within fourteen (14) days of the effective date of the suspension, and make such arrangements as are required herein within forty-five (45) days of the effective date of the suspension. The Respondent shall also furnish proof to the Bar within sixty

(60) days of the effective day of the suspension that such notices have been timely given and such arrangements made for the disposition of matters.

It is further ORDERED that if the Respondent is not handling any client matters on the effective date of the suspension, he shall submit an affidavit to that effect to the Clerk of the Disciplinary System at the Virginia State Bar. All issues concerning the adequacy of the notice and arrangements required by Paragraph 13 M. shall be determined by the Virginia State Bar Disciplinary Board, unless the Respondent makes a timely request for hearing before a three-judge court.

It is further ORDERED that pursuant to Part 6, § IV, ¶ 13.B.8.c. of the Rules of the Supreme Court of Virginia, the Clerk of the Disciplinary System shall assess all costs against the Respondent.

It is further ORDERED that the Clerk of the Disciplinary System shall mail an attested copy of this Order to Respondent at his address of record with the Virginia State Bar, being Steven Scott Biss at 36 Bear Alley, Suite 400, Petersburg, Virginia 23805 by certified mail, return receipt requested, and by regular mail to Kathryn R. Montgomery, Assistant Bar Counsel, Virginia State Bar, 707 East Main Street, Suite 1500, Richmond, Virginia 23219-2800.

Enter this Order this 3rd day of November, 2009.

VIRGINIA STATE BAR DISCIPLINARY BOARD

By: _____
William E. Glover, 1st Vice Chair

13

# Exhibit C

VIRGINIA:

BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

IN THE MATTER OF STEVEN SCOTT BISS
VSB Docket No. 07-033-070921

<u>MEMORANDUM ORDER</u>

This matter came on to be heard on October 18, 2010, by the Disciplinary Board of the Virginia State Bar (the Board) by telephone conference upon an Agreed Disposition between the parties, which was presented to a panel of the Board consisting of Steven A. Wannall (lay member), John S. Barr, Timothy J. Coyle, Samuel R. Walker and William E. Glover, Chair, presiding (the Panel).

Edward L. Davis, Bar Counsel, appeared as counsel for the Virginia State Bar, and the Respondent, Steven Scott Biss, appeared pro se.

Pursuant to the Rules of the Supreme Court of Virginia, Part 6, Section IV, Paragraph 13-6.H, the Bar and Respondent entered into a written proposed Agreed Disposition and presented same to the Panel.

The Chair swore the Court Reporter and polled the members of the Panel to determine whether any member had a personal or financial interest that might affect or reasonably be perceived to affect his or her ability to be impartial in these matters. Each member, including the Chair, verified they had no such interests.

The Panel heard argument from counsel and reviewed Respondent's prior disciplinary record with the Bar and thereafter retired to deliberate on the Agreed Disposition. Having considered all the evidence before it, a majority of the Panel accepted the Agreed Disposition.

## I.   FINDINGS OF FACT

The Disciplinary Board finds the following facts by clear and convincing evidence:

1.   During all times relevant hereto, the Respondent, Steven Scott Biss, was an attorney licensed to practice law in the Commonwealth of Virginia.

2.   Complainant Edward H. Shield is a business owner engaged in, among other things, providing financing to small businesses.

3.   One of Shield's companies, United Leasing (ULC) took over a refuse company (Garcia).

4.   Shield created United Refuse, LLC (UR) to manage Garcia.

5.   One of Shield's employees, James Lehner, managed UR.

6.   A dispute developed and Lehner tried to assert ownership of UR against ULC and Mr. Shield.  Litigation followed in the Hanover County Circuit Court, the Richmond Circuit Court, and the U.S. Bankruptcy Court.  Biss represented Lehner and UR in the circuit court matters and in the appeal of the bankruptcy matter.

7.   Shield obtained an ex parte injunction in the Hanover Circuit Court freezing UR's assets.

8.   Biss defended Lehner and UR in the matter and succeeded in having the injunction dissolved.

9.   Shield also obtained a garnishment in the Hanover County Circuit Court against the UR bank accounts.  Biss, however, succeeded in having the garnishment lifted as well.

10.  In February 2004, simultaneous with Shield's filing suit in Hanover, Biss, on behalf of Lehner and UR, filed suit against ULC and Shield in the Richmond Circuit Court seeking declaratory judgment to determine the ownership of UR.

11.  The only named plaintiff in this action, brought by Biss, was UR.

12.  Biss alleged bad faith on the part of ULC and Shield - that the Lehners had arranged financing to pay off the leases owed to ULC, but that they could not do so because Shield would not provide a payoff figure.  UR, through Biss, sought a declaration that certain notes owed to ULC/Shield had been paid, and a declaration of the amount owed on the remaining notes.

13.  In April 2004, United Refuse filed for bankruptcy protection.  The Richmond and Hanover cases were stayed as a result of the bankruptcy filing.

14. On March 14, 2005, the United States Bankruptcy Court decided that the Lehners held bare legal title to United Refuse for the benefit of United Leasing. The Court ordered the Lehners to quitclaim their interest to United Leasing, which they did.

15. Biss appealed the adverse bankruptcy decision for the Lehners. Since the Lehners had been dismissed as parties, he filed the appeal in the name of UR. The appeal was unsuccessful.

16. In January 2006, Biss filed suit on behalf of the Lehner Family Business Trust (LFBT) against ULC, Shield and other named defendants.

17. The suit sought to assert claims against ULC that had been assigned to LFBT by Garcia, the original failed refuse company. Garcia assigned these claims to LBFT in January 2006.

18. The theory of the case was that Shield and ULC collected an excessive amount of money from Garcia, resulting in claims that Garcia assigned to LBFT.

19. Although he served as counsel for UR in the 2004 suits and on appeal in the bankruptcy matter, in this case Biss alleged that UR was "a dummy company, organized by ULC to perpetrate fraud, gain an unfair advantage, and commit injustice," and that UR was ULC and Shield's "agent and stooge."

20. The defendants moved to disqualify Biss as counsel in the matter on the basis that Biss was taking a position contrary to his position in the 2004 suit and to the detriment of his former client, UR, in a substantially related matter.

21. The Circuit Court for the City of Richmond granted the motion, stating that in this case and the previous 2004 case, "There is a common thread of facts and issues which are identical or essentially the same," and that "there is the high likelihood that Biss acquired information about United Refuse (UR) during his prior representation that would assist him in the course of this litigation because he argued a directly contrary position in the previous case."

22. Following this development, Biss' clients nonsuited the matter.

23. Despite his disqualification from the Richmond case, Biss continued to represent the Lehners in the revived Hanover County suit brought against them by ULC. ULC moved to disqualify Biss on the similar grounds as in the Richmond suit and prevailed again.

24. In granting the motion to disqualify Biss, the Hanover County Circuit Court stated that, "The Lehners now employ Mr. Biss, who was once counsel for United Refuse (UR). United Refuse is a former client of Mr. Biss, whose best interests may run contrary to the Lehners'."

25. The Court found that Mr. Biss represented the Lehners against a former client, UR, in a substantially related matter, citing Rule 1.9 of the Rules of Professional Conduct. Rule 1.9 provides that a lawyer who has represented a client in a matter shall not thereafter represent another person in the same or substantially related matter if the interest of that person is adverse in any material respect to the interest of the former client.

26. The Court also noted that the Lehners had quitclaimed all of their interests in UR to ULC, and that UR had become a wholly owned subsidiary of ULC, the party adverse to Biss and his clients in the matter.

27. In neither the Hanover nor the Richmond cases did Biss have the consent of UR or its owners to proceed in these adversary actions.

28. In May 2007, Biss filed suit again for LBFT against ULC and Shield in the Richmond Circuit Court. This time the suit alleged breach of contract and conversion of personal property belonging to Garcia, the original failed refuse company.

29. Fourteen months later, after a series of motions, UR petitioned to intervene in the case and counsel moved to disqualify Biss again.

30. The motion to disqualify alleged that although UR was not a named defendant in the case, the factual allegations were against both ULC and UR, and that the allegations contradicted Biss' previous positions.

31. The Circuit Court for the City of Richmond denied the motion, stating that it would have entertained a mistrial if Biss had tried to bring UR into the suit. It also said that the defense should have made the motion much sooner. Shield made no motion for mistrial because Biss followed the Circuit Court admonition concerning United Refuse.

32. On this occasion, the LFBT won a jury verdict against Shield and ULC which was affirmed by the Richmond Circuit Court and further affirmed on appeal by the Supreme Court of Virginia.

## II. NATURE OF MISCONDUCT

The Disciplinary Board finds that certain conduct by Steven Scott Biss constitutes misconduct in violation of the following Rules of Professional Conduct:

RULE 1.9    Conflict of Interest: Former Client

(a)   A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation.

## III. IMPOSITION OF SANCTION

Having considered all the evidence before it and determined to accept the Agreed Disposition, the Disciplinary Board ORDERS that the Respondent, Steven Scott Biss, receive a Public Reprimand for his Misconduct and the Respondent is hereby Reprimanded effective October 18, 2010.

It is further ORDERED that costs shall be assessed by the Clerk of the Disciplinary System pursuant to the Rules of the Supreme Court of Virginia, Part Six, Section IV, Paragraph 13-9.E.

It is further ORDERED that the Clerk of the Disciplinary System shall send a certified copy of this order by certified mail to Steven Scott Biss at his last address of record with the Virginia State Bar, and hand delivered to Edward L. Davis, Bar Counsel, Virginia State Bar, 707 E. Main Street, Suite 1500, Richmond, Virginia 23219.

Valerie L.S. May, RPR, Chandler & Halasz Court, P.O. Box 9349, Richmond, Virginia 23227 (804) 730-1222, was the court reporter for the hearing and transcribed the proceedings.

ENTERED:   October 19, 2010

VIRGINIA STATE BAR DISCIPLINARY BOARD

By: _____

William E. Glover, Chair

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SHERWIN I. RAY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 3157 |
| | ) | |
| CITIGROUP GLOBAL MARKETS, INC., | ) | |
| CITIGROUP, INC., and | ) | |
| JOHN HENRY SPATZ, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case lost millions of dollars after their shares of SmartServ Online,

Inc. (SSOL), lost ninety-eight percent of their value between January 2000 and June 2002. They

claim that a prominent investment advisor, John Spatz, fraudulently induced them to invest in

SSOL, causing them significant losses. The Plaintiffs have sued Spatz, his employer, Citigroup

Global Markets, Inc., and its parent company, Citigroup, Inc. (collectively, Citigroup), under

sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a).

Plaintiffs have also asserted a state law claim of negligent supervision.  Defendants have moved

for summary judgment.   For the following reasons, the Court grants the motion.

### Facts

The plaintiffs are 155 individuals who purchased SSOL's publicly traded stock between

January 2000 and May 2002.  Citigroup is a global financial services firm that provides

investment and asset management services.  John Spatz is an institutional stockbroker employed

1

by Citigroup. Howard Borenstein, Mel Stewart, and Angelo Armenta are retail stockbrokers (collectively, "the brokers"), who claim that they relied on Spatz's fraudulent misstatements when they advised the plaintiffs to buy SSOL stock.

Plaintiffs allege that Citigroup and Spatz, in collaboration with insiders at SSOL, fraudulently induced the plaintiffs to purchase shares of SSOL stock by making a number of misrepresentations to the brokers. Among other things, Spatz allegedly told the brokers that SSOL had signed substantial contracts with large corporations including Microsoft, Smith Barney, and Verizon Wireless; that institutional investors at Citigroup thought highly of SSOL and were going to invest substantially in the stock; and that SSOL had obtained large sources of financing. Plaintiffs claim that Spatz knew these statements were false when he made them and used the retail public to artificially inflate the price of SSOL stock. They further allege that if they had known the truth behind Spatz's misrepresentations, they would have sold their stock before its value dropped and avoided the losses they suffered.

The brokers first met Spatz and began consulting with him in June 2000. At that time, SSOL's stock was priced at more than eighty dollars per share. Two years later, the stock barely exceeded one dollar. The stock prices of SSOL's competitors suffered a similar fate during the same time period: 724 Solutions lost 98.9% of its value; Aether Systems lost 98.39% of its value; and Openwave Systems lost 94.35% of its value.

### Discussion

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

56(c). The Court must view the facts in favor of the plaintiffs and draw all reasonable inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1.     **Federal securities law claims**

The Securities Exchange Act of 1934 makes it unlawful for any person to

use or employ, in connection with the purchase or sale of any security registered on a national securities exchange... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78(j)(b). Securities and Exchange Commission Rule 10b-5 prohibits the making of any "untrue statement of material fact" in connection with the sale of securities. 17 C.F.R. § 240.10b-5. Implied by this statute and implementing regulation is a private cause of action, which closely resembles a common law action for fraud. *Dura Pharms. v. Broudo*, — U.S. —, 125 S.Ct. 1627, 1631 (2005). To prevail on such a claim, a plaintiff must demonstrate that the defendant made a material misrepresentation or omission with scienter in connection with the purchase or sale of securities, that the plaintiff reasonably relied on the misrepresentation, and that the plaintiff suffered economic loss which was caused by the misrepresentation. *Id.* In addition, a plaintiff may recover from an individual or entity, including a brokerage firm, if the plaintiff demonstrates that the firm "directly or indirectly" controlled a person liable for securities fraud and the firm did not act in good faith. 15 U.S.C. § 78t(a); *Harrison v. Dean Witter Reynolds*, 79 F.3d 609, 614-15 (7th Cir. 1996).

The plaintiffs argue that based on the evidence they have offered, a jury reasonably could find that Spatz committed securities fraud and that Citigroup is jointly and severally liable as a controlling entity. The defendants, on the other hand, insist that no jury reasonably could find

3

that Spatz's alleged misrepresentations caused plaintiffs' losses, because the entire technology industry – of which SSOL was a part – suffered an economic collapse during the relevant time period, meaning the plaintiffs would have lost their investment irrespective of Spatz's alleged misrepresentations. The defendants also make other arguments, but we need not address them, because this one is dispositive of the federal claims.

Loss causation is a required element of a 10b-5 action and is similar to the proximate cause element in a common law fraud action. *See Dura Pharms.*, 125 S.Ct. at 1632. To present evidence of loss causation, "it [i]s not sufficient for an investor to allege only that it would not have invested but for the fraud. Such an assertion alleges transaction causation, but it does not allege loss causation. Rather, it is also necessary to allege that, 'but for the circumstances that the fraud concealed, the investment . . . would not have lost its value.'" *Caremark, Inc. v. Coram Healthcare Corp.* 113 F.3d 645, 648-49 (7th Cir. 1997) (quoting *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683 (7th Cir. 1990)) (citation omitted). In other words, transaction causation is proof that a knowledgeable investor would not have made the investment in question; loss causation is proof that a particular misrepresentation had a causal connection with the loss in value of the plaintiff's investment.[1] *See id.*

In *Bastian*, the plaintiffs were investors in oil and gas limited partnerships who sued the

---

[1] Plaintiffs cite two Second Circuit decisions to support the proposition that they can establish loss causation by presenting evidence that they would not have invested in SSOL absent Spatz's misrepresentations. *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000); *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705 (2d Cir. 1980). Aside from the fact that these decisions do not appear to represent the law in this circuit, the Second Circuit has recently reaffirmed the distinction between transaction causation (why the plaintiff bought or sold) and loss causation (whether the misrepresentation is a legally cognizable cause of the plaintiff's loss) and as such has called into doubt the vitality of *AUSA*. *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 173-74 (2d Cir. 2005).

4

promoters of the partnerships after their investments lost money. *Bastian*, 892 F.2d at 682. The

district court granted the defendants' motion to dismiss because the plaintiffs failed to allege loss

causation, and the plaintiffs appealed. *Id.* The Seventh Circuit upheld the district court's order

agreeing that the plaintiffs failed to allege "*why* the[ir] investment was wiped out." *Id.* at 684

(emphasis in original). The court said that gas and oil prices steadily declined during the time

period in question, suggesting that the plaintiffs' loss was caused not by the defendants'

misrepresentations but by independent market forces. *Id.* ("If the plaintiffs would have lost their

investment regardless of the fraud, any award of damages would be a windfall.").

     The Seventh Circuit has repeatedly reaffirmed *Bastian*'s holding that a plaintiff may not

recover for securities fraud without offering evidence that his or her losses are attributable to the

defendant's fraud and not market forces. *Law v. Medco Research, Inc.*, 113 F.3d 781, 786-87

(7th Cir. 1997); *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 54 (7th Cir. 1995). In *Law*, the

plaintiffs sued the defendant drug company for securities fraud. *Law*, 113 F.3d at 784. The

defendant urged the court to affirm a lower court's grant of summary judgment contending that

the plaintiffs failed to present evidence of loss causation. *Id.* at 786. The defendant offered the

opinion of a financial expert who compared the price movements of the defendant's stock with

that of other competing companies and concluded that market forces -- and not any allegedly

fraudulent statements -- caused the plaintiffs' losses. *Id.* The court held that summary judgment

was proper because the plaintiffs did not contest the expert's conclusions. *Id.* at 787.

     In *Ryan*, the plaintiffs sued the defendants under the Illinois Consumer Fraud Act for

making fraudulent statements that caused the plaintiffs to purchase the defendants' company.

*Ryan*, 59 F.3d at 52. Though the court recognized that the plaintiffs presented evidence that the

5

defendants made misrepresentations, the court held, citing *Bastian*, that summary judgment was proper because the plaintiff did not demonstrate that the misrepresentations had anything to do with the company's failure. *Id.* at 54 ("Ryan fails to show that his business losses were caused by [the misrepresentations] as opposed to a general downturn in the market . . . or simple cash flow mismanagement ").

In this case, the plaintiffs must offer evidence from which a jury reasonably could find that they would have lost less money had SSOL's condition been as Spatz represented. *Bastian*, 892 F.2d at 685-86. The plaintiffs argue that some of their losses must have been caused by the misrepresentations, because if they had invested in Aether Systems instead of SSOL, they would have lost thirteen million dollars instead of sixteen million dollars. This is not evidence of loss causation. There are any number of reasons why Aether Systems fared slightly better than SSOL during the collapse of the technology market in the early part of the present decade, and though it is theoretically possible that SSOL's inability to secure particular contracts had something to with this difference in outcome, theoretical possibilities are insufficient to withstand a defendant's motion for summary judgment. Before they can rely on Aether Systems' marginally better performance, plaintiffs must put forth evidence – through expert opinion or otherwise – from which a jury reasonably could find that SSOL's poorer performance is attributable in some way to the subject matter involved in Spatz's misrepresentations. Plaintiffs have offered no such evidence.

The plaintiffs also allege in their brief – without a single citation to the voluminous record – that Spatz caused the plaintiffs to buy SSOL stock at an inflated price and that "[w]hen the truth about SSOL became known in late May 2002, SSOL began to collapse like the house of

6

cards that it was." Pl. Resp. at 18. If this allegation were supported by evidence, it might allow a jury reasonably to infer loss causation. *See Dura Pharms. Inc.*, 125 S.Ct. at 1635 (stating that a plaintiff can establish loss causation by presenting evidence that a defendant's fraudulent statements artificially inflated a stock price and that the stock price dropped once the fraud was revealed to the public).

In fact, however, the allegation misstates the record. The plaintiffs maintain that they discovered Spatz's alleged fraud in late May 2002 and that the stock price collapsed almost immediately. The evidence reflects, however, that by late May 2002 the price of SSOL stock had already collapsed. The stock price had settled to just over two dollars per share, which was down from sixty-five dollars per share in June 2000, when the plaintiffs began purchasing SSOL stock based on Spatz's recommendations. Moreover, even if SSOL's stock price dropped slightly after the plaintiffs learned the truth about Spatz's fraudulent statements, the plaintiffs have not presented evidence from which a jury could determine when or how the fraudulent statements came to light or what particular drop in price can be attributed to the revelation. Consequently, no jury reasonably could find that a drop in stock price between late May 2002 and June 2002 was proximately caused by disclosure of the truth.

The Court next considers an exception to the ordinary rule of loss causation, which allows a plaintiff to demonstrate loss causation by offering evidence that the defendant fraudulently represented an investment as one involving low risk. *Bastian*, 892 F.2d at 685-85. *Bastian*'s primary holding is that a plaintiff cannot recover for securities fraud by proving only transaction causation. The court attempted, however, to harmonize the decisions of other circuits by suggesting an additional method for proving loss causation:

7

> Suppose a broker gives false assurances to his customer that an investment is risk-free. In fact it is risky, the risk materializes, the investment is lost. Here there can be no presumption that but for the misrepresentation the customer would have made an equally risky investment. On the contrary, the fact that the broker assured the customer that the investment was free of risk suggests that the customer was looking for a safe investment. Liability in such a case (well illustrated by *Bruschi v. Brown, supra*, 876 F.2d at 1527) is therefore consistent with nonliability in a case such as the present.

*Id.* In *Bastian*, 892 F.2d at 686, the court concluded that the plaintiffs did not satisfy this exception, but other courts in this District have applied *Bastian*'s increased risk exception in favor of plaintiffs. *See Medline Inds., Inc. Employee Profit Sharing and Retirement Trust v. Blunt, Ellis & Loewi, Inc.*, No. 89 C 4851, 1993 WL 13436, *12 (N.D. Ill. Jan. 21, 1993); *Broderick v. Menconi*, No. 88 C 0161, 1990 WL 51180 (N.D. Ill. Apr. 12, 1990).

In this case, the plaintiffs assert in their brief that Spatz made representations that SSOL was a "sure fire guarantee." Pl. Revised Reply at 2. The record does not support this contention. Plaintiffs cite the affidavit of Francis Weber, a broker with Citigroup Global Markets, who testified not that Spatz said SSOL was a low risk stock, but that he said SSOL would obtain millions of dollars in revenue from contracts with large corporations. Weber Aff. ¶ 8. In any event, the relevance of Weber's testimony is questionable, because there is no claim that he advised any of the plaintiffs to buy SSOL stock based on this statement by Spatz. For these reasons, no jury reasonably could find, based on the evidence offered by plaintiffs, that Spatz's misrepresented the risk involved in purchasing SSOL stock.

Because the Court is granting summary judgment for defendants on plaintiffs' securities fraud claims, plaintiffs' motion for partial summary judgment requesting that Citigroup be deemed a control person under 15 U.S.C. § 78t(a) is effectively rendered moot.

8

Case: 1:03-cv-03157 Document #: 181 Filed: 10/18/05 Page 9 of 10 PageID #:4102

## 2.  State law claims

The plaintiffs' original complaint contained several state law claims alleging a fraudulent scheme involving the purchase and sale of stock.  In an earlier decision, the Court dismissed those claims pursuant to the Securities Litigation Uniform Standards Act of 1998 (SLUSA), which prohibits a "covered class action" based on state law alleging misrepresentations, omissions, or the use of deception in connection with the purchase or sale of a security.  15 U.S.C. § 78bb(f)(1).  In that decision we noted, citing *Riley v. Merrill Lynch, Pierce, Fenner & Smith*, 292 F.3d 1134, 1345 (11th Cir. 2003), that our ruling did not preclude the plaintiffs from recasting their claims by alleging that Spatz's misrepresentation caused them to retain – rather than purchase or sell – their SSOL stock.  *Ray v. Citigroup, Inc.*, No. 03 C 3157, 2003 WL 22757761, *6 (N.D. Ill. Nov. 20, 2003).  The plaintiffs amended their complaint accordingly. More recently, however, the Seventh Circuit held, contrary to *Riley* and our previous ruling, that the SLUSA prohibits not only state law claims alleging misrepresentation in connection with the purchase or sale of securities, but also claims alleging misrepresentation in connection with a plaintiff's retention of securities.  *See Disher v. Citigroup Global Markets*, 419 F.3d 649, 654 (7th Cir. 2005); *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 484 (7th Cir. 2005).

Recognizing the import of these decisions, plaintiffs now concede that most of their state law claims are precluded by the SLUSA.  Pl. Resp. at 21.  They contend, nonetheless, that their claim of negligent supervision may survive summary judgment because it "does not rely on deceit or manipulation as an element of the cause of action."  *Id.*  This argument, however, has already been considered and rejected by the Third Circuit.  *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3d Cir. 2005).  In *Rowinski*, the plaintiffs argued that their state law

9

breach of contract claim was not preempted by the SLUSA because a misrepresentation was not an essential legal element of their claim. *Id.* The court rejected the argument, reasoning that the SLUSA "preempts any covered class action 'alleging' a material misrepresentation or omission in connection with the purchase or sale of securities" and that "preemption does not turn on whether the allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another." *Id.* (quoting 15 U.S.C. § 78bb(f)(1)); *see also Professional Mgmt. Ass'n, Inc., Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (dismissing plaintiffs' negligence claim under the SLUSA because it contained allegations of misrepresentations).

   We agree with the reasoning of the Third Circuit and conclude that a claim is not removed from the SLUSA's intended purview only because a misrepresentation is not a legal element of the state law claim. Instead, the determining factor is whether the complaint alleges that misrepresentations were made in connection with the purchase or sale of securities. *Id.* The negligent supervision claim in this case plainly includes such allegations. *See* Pl. Am. Compl. at 52 ("Citigroup breached its duties and failed to supervise and control Spatz's actions, misrepresentations, and misconduct."). Consequently, it is preempted by the SLUSA.

### Conclusion

   For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 154]. All other pending motions are terminated [docket no. 158, 176]. The Clerk is directed to enter judgment in favor of the defendants.

                                    /s/ Matthew F. Kennelly
                                    MATTHEW F. KENNELLY
                                    United States District Court

Date: October 18, 2005

# Exhibit E



## PACER Case Locator

New Search ✔   Saved Items ✔   Court Information   Settings ✔                                     Michael Farley ✔

⌂ > Party Search > Search Results

Search Criteria: Party Search: Last Name: [Lokhova]; First Name: [Svetlana] 🖶

Result Count: 4

| | Party Name | | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|---|---|
| ⓘ | Lokhova, Svetlana | ☆ | 0:2020-cv-01368 | Svetlana Lokhova v. Stefan Halper | U.S. Court of Appeals, Fourth Circuit | 03/30/2020 | |
| ⓘ | Lokhova, Svetlana | ☆ | 0:2020-cv-01432 | Svetlana Lokhova v. Stefan Halper | U.S. Court Of Appeals, Fourth Circuit | 04/15/2020 | |
| ⓘ | Lokhova, Svetlana (pla) | ☆ | 1:2019-cv-00632 | Lokhova vs. Halper, et al. | Virginia Eastern District Court | 05/23/2019 | 02/27/2020 |
| ⓘ | Lokhova, Svetlana (pla) | ☆ | 1:2020-cv-01603 | Lokhova v. Halper | Virginia Eastern District Court | 12/31/2020 | |

PACER Service Center    Receipt 03/13/2021 15:20:18 984979440

## ᴄᴍ/ECF

Query    Reports ▾    Utilities ▾    Logout

1:20-cv-01603-AJT-MSN Lokhova v. Halper
Anthony J. Trenga, presiding
Michael S. Nachmanoff, referral
Date filed: 12/31/2020
Date of last filing: 03/09/2021

## History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| | Filed & Entered | 12/31/2020 | Initial Case Assignment |
| | Filed & Entered | 12/31/2020 | Complaint |
| | Filed & Entered | 02/19/2021 | Proposed Summons |
| | Filed & Entered | 03/10/2021 | Financial Disclosure Statement |
| | Filed & Entered | 03/10/2021 | Summons Issued |
| | Filed & Entered | 03/09/2021 | Motion for Leave to Appeal |

**Exhibit F**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

INDECO UNION, et al.,              )
                                )
      Plaintiffs,            )
                                )     Case No.: 1:20-cv-01073-TSE-TCB
v.                           )
                                )
ANNE M. MEADOR,         )
                                )
      Defendant.          )

### REPLY TO TRUSTEES' RESPONSES [ECF NOS. 21 AND 22] TO ORDER ENTERED FEBRUARY 10, 2021

COMES NOW defendant, Anne M. Meador, by counsel, and files her Reply to Trustees' Responses [ECF Nos. 21 and 22] to Order entered February 10, 2021, as follows:

### INTRODUCTION

By Order dated February 10, 2021, the court directed the Chapter 7 Trustee for David Levine (Thomas H. Fluharty) and the Chapter 7 Trustee for Indeco Union (Janet Smith Holbrook) to address: (1) whether Indeco Union should be dismissed from this action, and (2) if so, whether the dismissal should be with or without prejudice. On February 24, 2021, Mr. Fluharty filed his response [ECF No. 21], which deferred to Ms. Holbrook. The following day, Ms. Holbrook filed her response. [ECF No. 22] In her filing, Ms. Holbrook advises the court that she was appointed as Trustee for Indeco Union on January 19, 2021. [ECF No. 22, ¶ 2]. She further advises the court that she was unaware that Steve S. Biss, purportedly acting on behalf of Indeco Union, had filed a Notice of Voluntary Dismissal on January 25, 2021. Ms. Holbrook requests that the court either provide her additional time to evaluate the case or dismiss Indeco Union without prejudice.

Meador submits that it is clear that Steve S. Biss had no authority to file the Notice of Voluntary Dismissal on January 25, 2021, and is subject to sanctions under Fed. R. Civ. P. 11 for

doing so. Meador seeks relief against Mr. Biss under Rule 11 and asks that the court provide Ms. Holbrook additional time to evaluate the claims of Indeco Union before taking further action on the pending motion to dismiss Indeco Union with prejudice.

## ARGUMENT

Rule 11 provides, in pertinent part:

(a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

    (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

    (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Although it is questionable whether Mr. Biss had authority to file this suit on behalf of Indeco Union on September 11, 2020 given the status of the various bankruptcy proceedings and his acknowledgement that he never conferred with Indeco Union before filing it, what is clear is

that as of January 19, 2021, Ms. Holbrook was the Trustee of Indeco Union. This was known to Indeco Union and to David Levine, and Meador submits it was known to or should have been known to Mr. Biss. As of the date that Ms. Holbrook was appointed as Trustee of Indeco Union, there can be no question that whatever authority Mr. Biss may have had to act on behalf of Indeco Union was extinguished. Thus, when he filed the Notice of Voluntary Dismissal on behalf of Indeco Union on January 25, 2021, he was not legally authorized to do so. What is more disturbing is that he filed the pleading without so much as contacting Indeco Union or the Trustee of Indeco Union and without informing the court of the legal posture of Indeco Union as a result of the bankruptcy case(s).

Meador submits that Mr. Biss' actions have caused unnecessary delay, increased the cost of litigation and his filing was a known, legal nullity. These are the very things which Rule 11 is meant to eliminate. Meador submits that, given the totality of the circumstances, it is appropriate to sanction Mr. Biss and require him to pay reasonable attorneys' fees and costs incurred in addressing the improperly filed Notice of Voluntary Dismissal.

With regard to Ms. Holbrook's request that the court either provide her additional time to evaluate the case or dismiss Indeco Union without prejudice, Meador does not object to Ms. Holbrook being granted additional time to evaluate the case and file a substantive response to the pending, unopposed motion to dismiss Indeco Union with prejudice. Meador objects to the dismissal of Indeco Union without prejudice because she has a pending motion to dismiss, the claims outlined in the Complaint on behalf of Indeco Union and David Levine substantially overlap, and Meador does not wish to have Indeco Union suffer a voluntary dismissal without prejudice, only to later have yet another lawsuit brought on claims which are retaliatory and without merit.

## CONCLUSION

WHEREFORE, the foregoing considered, defendant, Anne M. Meador, by counsel,

requests that the court enter sanctions against Mr. Biss under Fed. R. Civ. P. 11, for the reasons

stated herein, enter an order allowing Ms. Holbrook additional time to evaluate the case, and allow

Indeco Union, through a properly authorized attorney, to file a substantive response to the pending,

unopposed motion to dismiss Indeco Union with prejudice.

Respectfully submitted,
**Anne M. Meador**
**By Counsel**

_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
BANCROFT, McGAVIN, HORVATH & JUDKINS
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555
hbardot@bmhjlaw.com
_Counsel for Defendant_

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2021, I emailed and electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following persons, if registered with the court:

Steven S. Biss, Esquire
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:    (804) 501-8272
Facsimile:    (202) 318-4098
Email:        stevenbiss@earthlink.net
Counsel for Plaintiff

Thomas H. Fluharty, Esquire
408 Lee Avenue
Clarksburg, WV 26301
thfaal@aol.com
Trustee for Levine

Janet Smith Holbrook, Esquire
DINSMORE & SHOHL, LLP
611 Third Avenue
Huntington, WV 25701
Janet.holbrook@dinsmore.com
Trustee for Indeco Union

                                    /s/
                        Heather K. Bardot
                        VSB No. 37269
                        BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
                        9990 Fairfax Boulevard, Suite 400
                        Fairfax, Virginia 22030
                        (703) 385-1000 (telephone)
                        (703) 385-1555 (facsimile)
                        Hbardot@bmhjlaw.com
                        *Counsel for Defendant*